1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LEONARD PAUL RUBIO,

12             Petitioner,              No. CIV S-05-0638 LKK DAD P

13        vs.

14  JEANNE S. WOODFORD,

15             Respondent.              FINDINGS AND RECOMMENDATIONS

16  _____/

17             Petitioner is a state prisoner proceeding pro se with an application for a writ of

18  habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California

19  Board of Parole Hearings (hereinafter "Board") to deny him parole at his second parole

20  consideration hearing on February 26, 2002, violated his rights to due process and equal

21  protection, his right to effective assistance of counsel, and the Americans with Disabilities Act

22  (ADA).  Upon careful consideration of the record and the applicable law, the undersigned will

23  recommend that petitioner's application for habeas corpus relief be denied.

24                         PROCEDURAL BACKGROUND

25             Petitioner is confined pursuant to a judgment of conviction entered in the Solano

26  County Superior Court in 1988.  (Pet. at 2.)  A jury found petitioner guilty of one count of second

1

1   degree murder, and it was determined that he used a firearm in the commission of the crime.

2   (Id.)  On May 12, 1988, petitioner was sentenced to state prison for a term of fifteen years to life

3   with the possibility of parole.  (Id.)  The Superior Court stayed the two-year sentencing

4   enhancement for the use of a firearm.  (Id.)  Petitioner was also given credit for time served (603

5   days plus 302 days, per California Penal Code § 4019).  (See Answer, Ex.1 at 2.)

6          Petitioner's initial parole consideration hearing, held on June 1, 1999, resulted in a

7   denial of parole.  (Pet., Attach. D.)  A subsequent parole consideration hearing was held on

8   February 26, 2002.  (Pet., Attach. A - entitled "Hearing Transcripts.")  On that date, a two-

9   member panel of the Board  found petitioner not suitable and denied parole for two years.  (Id. at

10   49-53.)  Petitioner challenges that latter decision in this habeas action.

11          Petitioner filed an administrative appeal from the February 26, 2002, Board

12   decision on May 3, 2002.  (Pet., Attach. D, entitled "Administrative Appeal (CDC 1040) and

13   Decision.")  The Board's Office of Policy and Appeals denied petitioner's requests for relief,

14   except one.  In this regard, it agreed with petitioner that "the panel had insufficient evidence to

15   conclude that he needs therapy."  (Id. at 5.)  In this regard, the Office of Policy and Appeals

16   stated that,

17                [a] review of the prisoner's psychiatric/psychological reports reveal
                that the prisoner has no mental health disorder and there is no
18                recommendations [sic] for any form of therapy.  Therefore, the
                reference made regarding 'therapy' on page 52 of the Decision will
19                be deleted.

20   (Id.)

21          On February 27, 2004, petitioner filed a habeas petition challenging the 2002

22   parole denial in the Solano County Superior Court.  (Pet., at unnumbered 5.)  By order filed

23   March 4, 2004, the Solano County  Superior Court denied the petition.  (Pet., Attach. entitled

24   "Previous Court Orders.")  Petitioner next challenged the 2002 parole denial by submitting a

25   habeas petition to the California Court of Appeal for the First Appellate District.  (Id.)  The state

26   appellate court summarily denied that petition on March 24, 2004.  (Id.)  Petitioner then filed a

1 | habeas petition with the California Supreme Court that  was summarily denied by order filed
2 | March 16, 2005. (Id.)

3 |     Petitioner's federal habeas petition challenging the 2002 parole denial was
4 | received for filing by this court on March 31, 2005.

5 | ANALYSIS

6 | I. Standards of Review Applicable to Habeas Corpus Claims

7 |     A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of
8 | some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,
9 | 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.
10 | Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the
11 | interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);
12 | Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas
13 | corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377
14 | (1972).

15 |     This action is governed by the Antiterrorism and Effective Death Penalty Act of
16 | 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d
17 | 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting
18 | habeas corpus relief:

19 |     An application for a writ of habeas corpus on behalf of a
20 | person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the
21 | claim

22 |     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as
23 | determined by the Supreme Court of the United States; or

24 |     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the
25 | State court proceeding.

26 | /////

3

1   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

2   (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3           The court looks to the last reasoned state court decision as the basis for the state

4   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

5   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

6   federal habeas court independently reviews the record to determine whether habeas corpus relief

7   is available under section 2254(d).[1]  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

8   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

9   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds,

10  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

11  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

12  1167 (9th Cir. 2002).

13  II.  Petitioner's Claims

14          Petitioner challenges the Board's 2002 finding of parole unsuitability on seven

15  grounds.  Stated in the order presented in the petition, he claims an entitlement to habeas relief

16  because: (1) the Board's failure to fix his term violates California Penal Code § 3041 and the

17  Due Process Clause of the U.S. Constitution; (2) the Board held  petitioner's exercise of his right

18  not to discuss his commitment offense against him; (3) the Board's decision was arbitrary and

19  violated his right to due process because there was no evidence to support its finding that he was

20  an unreasonable risk of danger to society; (4) the Board has failed to establish and apply equal

21  standards of evaluation and that the denial of parole eligibility for two years violated his

22  constitutional rights to due process and equal protection; (5) he was denied effective assistance of

23

24          [1] Such is the case here.  The Solano County Superior Court's two-page opinion denying
    the petitioner's request for habeas relief contained no reasoning beyond cursory approval of the
25  Board's decision.  (See Pet., Attach. entitled "Previous Court Orders.")  The California Court of
    Appeals for the First Appellate District and the California Supreme Court summarily denied the
26  habeas petitions submitted by petitioner.  (Id.)

                                        4

1  counsel; (6) the Board violated his rights under the Americans with Disabilities Act; and (7) he

2  has been denied "complete and meaningful review of his petition" in state court, in violation of

3  the Fourteenth Amendment.

4      A.   The Board's decision and the applicable law

5          The Board commenced its decision denying petitioner parole by stating that the

6  panel had reviewed "all information received at the hearing and relied on the following

7  circumstances in concluding that the prisoner is not yet suitable for parole and would pose an

8  unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet.,

9  Attachment A, entitled "2002 Parole Hearing Transcript," p. 49.) The phrases "unreasonable risk

10 of danger to society" and "a threat to public safety" are derived from § 3041(b) of the California

11 Penal Code and § 2281(a) of Title 15 of the California Code of Regulations. Pursuant to the

12 Penal Code provision,

13       [t]he panel or board shall set a release date unless it determines that
   the gravity of the current convicted offense or offenses, or the
14       timing and gravity of current or past convicted offense or offenses,
   is such that consideration of the public safety requires a more
15       lengthy period of incarceration for this individual, and that a parole
   date, therefore, cannot be fixed at this meeting.
16

17 Cal. Penal Code § 3041(b).

18         The state regulation governing parole suitability findings for life prisoners states

19 as follows with regard to the statutory requirement of California Penal Code § 3041(b):

20       Regardless of the length of time served, a life prisoner shall be
   found unsuitable for and denied parole if in the judgment of the
21       panel the prisoner will pose an unreasonable risk of danger to
   society if released from prison.
22

23 Cal. Code Regs. tit. 15, § 2281(a). The same regulation requires the Board to consider all

24 relevant, reliable information available regarding,

25       the circumstances of the prisoner's social history; past and present
   mental state; past criminal history, including involvement in other
26       criminal misconduct which is reliably documented; the base and

1    other commitment offenses, including behavior before, during and
     after the crime; past and present attitude toward the crime; any
2    conditions of treatment or control, including the use of special
     conditions under which the prisoner may safely be released to the
3    community; and any other information which bears on the
     prisoner's suitability for release.
4
5    Cal. Code Regs. tit. 15, § 2281(b).

6           The regulation identifies circumstances that tend to show suitability or

7    unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

8    prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

9    committing crimes with a potential of personal harm to victims; the prisoner has experienced

10   reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

11   the presence of remorse or has given indications that he understands the nature and magnitude of

12   his offense; the prisoner committed his crime as the result of significant stress in his life; the

13   prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

14   the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

15   probability of recidivism; the prisoner has made realistic plans for release or has developed

16   marketable skills that can be put to use upon release; institutional activities indicate an enhanced

17   ability to function within the law upon release.  Id., § 2281(d).

18          The following circumstances tend to indicate unsuitability for release: the prisoner

19   committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

20   previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

21   a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

22   the offense; the prisoner has engaged in serious misconduct in prison.  Id., § 2281(c).  Factors to

23   consider in deciding whether the prisoner's offense was committed in an especially heinous,

24   atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

25   or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

26   as an execution-style murder; the victim was abused, defiled or mutilated during or after the

6

1    offense; the offense was carried out in a manner that demonstrated an exceptionally callous

2    disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

3    to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).

4                         Under current California law, as recently clarified by the State Supreme Court,

5                  the determination whether an inmate poses a current danger is not
                   dependent upon whether his or her commitment offense is more or
6                  less egregious than other, similar crimes.  (Dannenberg, supra, 34
                   Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
7                  dependent solely upon whether the circumstances of the offense
                   exhibit viciousness above the minimum elements required for
8                  conviction of that offense.  Rather, the relevant inquiry is whether
                   the circumstances of the commitment offense, when considered in
9                  light of other facts in the record, are such that they continue to be
                   predictive of current dangerousness many years after commission
10                 of the offense.  This inquiry is, by necessity and by statutory
                   mandate, an individualized one, and cannot be undertaken simply
11                 by examining the circumstances of the crime in isolation, without
                   consideration of the passage of time or the attendant changes in the
12                 inmate's psychological or mental attitude. [citations omitted].

13   In re Lawrence, 44 Cal. 4th 1181, 1221 (2008).

14                        In addressing the factors it considered in reaching its 2002 decision that petitioner

15   was unsuitable for parole, the Board in this case stated as follows:

16                  PRESIDING COMMISSIONER HEPBURN:

17                  . . .  Mr. Rubio, we did deny your parole for a two year period.  Let
                   me read the decision to you.  The Panel reviewed all of the
18                 information received at the hearing and relied on the following
                   circumstances in concluding that the prisoner is not suitable for
19                 parole and would pose an unreasonable risk of danger to society or
                   a threat to public safety if released from prison.  Number one
20                 reason, of course, was the timing and gravity of the commitment
                   offense itself, which was carried out in a very callous manner, and
21                 for reasons which are very trivial in relation to the offense.  These
                   conclusions were drawn from the Statement of Facts wherein the
22                 prisoner had an ongoing relationship with the victim in this case,
                   Heather Dunn, and the fact that he abused her physically over a
23                 period of time.  That's in the record.  And was jealous.  He thought
                   that she was dating other people.  He armed himself with a gun and
24                 went to the front of her school where he shot her and killed her.
                   He had no previous record.  He had been a student finishing up
25                 high school getting ready to go to college prior to his incarceration.
                   He did have a problem with substance abuse and drinking, as he
26                 has previously indicated, consuming large amounts of alcohol with

                                                      7

his football buddies, and things of that nature.  His institutional behavior, on the other hand, has been very good.  He has – hasn't had a disciplinary since 1993.  He has improved himself educationally, taking college courses.  He's participated in self-help programs including theology classes, AA and Spirituality Class, among others.  He's done well in his work assignments.  He's upgraded himself vocationally.  Psychological evaluation completed by Dr. Duprey on 4/27/99 is fairly supportive of release.  CC1 completed his report.  Mr. Rubio did indicate that he does disagree with the conclusions by CC1 Curzon, C-U-R-Z-O-N, in his report, but there is an interesting comment Mr. Curzon makes in his report.  He writes that:

"Rubio has prepared himself educationally and vocationally and has been, basically, a model prisoner.  However, there seems to be a degree of uncertainty of his emotional maturity should he have another relationship if he were released at this time.  With this uncertainty comes a moderate degree of threat to the public if he were released at this time."

His parole plans appear to be in order.  He's got significant family support, certainly has vocational skills, job offers, things of that nature, which will assist him when he is released on parole.  In response to 3042 notices, we had a representative from the prosecuting agency, the District Attorney's Office in Solano, County, who was present at the hearing and voiced opposition to parole.  As I indicated, this is a two year denial.  In a separate decision, the Hearing Panel finds that the prisoner has been convicted of murder and it's not reasonable to expect that parole would be granted at a hearing during the next two years.  Specific reasons for this finding are as follows.  Timing and gravity of the commitment offense, which was carried out in a rather cruel manner for reasons which were trivial in relation to the gravity of the offense, which I have previously described.  Also, he hasn't completed necessary programming, which is essential to his adjustment.  And that would be in the form of any self-help programs that might assist him in dealing with the causative factors of the commitment offense itself and the underlying issues.  So, the Panel's recommendation is going to be that he remain disciplinary free, to the extent that it's available, participate in self-help and therapy programs.  And that completes the reading of the decision.  Commissioner Thompson, do you have any comments you'd like to make?

DEPUTY COMMISSIONER THOMPSON:

No, thank you.

/////

/////

1      PRESIDING COMMISSIONER HEPBURN:

2          Mr. Rubio, the gravity of the crime (inaudible).  I'm also
       concerned with your version of the offense here.  I would like to
3      have talked to you.  It's certainly your right to not talk about the
       crime, but the version I'm left with is what it says in the file here,
4      and it doesn't – the physical evidence and the circumstances don't
       make sense to me with your – with your version of what occurred,
5      and I'd like – would have liked to explore that with you.  And you
       might consider doing that sometime because I'm sure future Panels
6      are going to have the same questions that I have.  And that causes
       me concern for your level of remorse, because if you're not
7      accepting responsibility for what you actually did, then remorse is
       meaningless.  If you have remorse for what you actually did, then
8      that's true remorse.  I can't determine that from what we have on
       file here.  That's my comment.  And that will complete this hearing
9      at 12:32 p.m.  And good luck to you, and here's a copy of the
       decision.

10

11   (Pet., Attachment A, at 49-53)

12        B.  Due Process

13          Petitioner's principal claim is that his right to due process was violated by the

14   Board's denial of parole.  The petitioner presents this due process claim in several different

15   grounds for relief in the petition.  Thus, he alleges that: (1) § 3041(b) of the California Penal

16   Code creates a liberty interest and a due process right to a presumptive parole release date and the

17   Board's failure to fix his term violates that right (Ground 1); (2) the Board held the petitioner's

18   exercise of his right not to discuss his commitment offense against him (Ground 2); (3) the denial

19   of parole was arbitrary because there was no evidence to support it (Ground 3); and (4)

20   "petitioner has been denied his right to a complete and meaningful review of his petition" in state

21   court (Ground 7).  (See Pet. at 1-23.)   The court addresses the merits of each of these versions of

22   petitioner's core due process claim.[2]

23   ─────────────────

24        [2]  Petitioner also presents several state law claims.  For instance, he alleges that the Board
     must ensure that prison terms be "uniform."  (Pet., Ground 1 at 3.)  Petitioner also claims that
25   California Penal Code § 3041 requires the Board to grant him a parole date because of its
     direction that one year prior to an inmate's minimum eligible parole date, a Board panel shall
26   meet with the inmate and "shall normally" set a parole release date.  He claims that under this
     provision "the Board was required to fix his term at his initial hearing and that their continuous

9

1    The Due Process Clause of the Fourteenth Amendment prohibits state action that

2 deprives a person of life, liberty, or property without due process of law.  One alleging a due

3 process violation must first demonstrate that he was deprived of a liberty or property interest

4 protected by the Due Process Clause and then show that the procedures attendant upon the

5 deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

6 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

7    A protected liberty interest may arise from either the Due Process Clause of the

8 United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

9 The United States Constitution does not, of its own force, create a protected liberty interest in a

10 parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

11 However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

12 parole release will be granted' when or unless certain designated findings are made, and thereby

13 gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz

14 v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a

15 cognizable liberty interest in release on parole, even for prisoners who have not already been

16 granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);

17 Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re

18 Lawrence, 44  Cal. 4th at 1204, 1210, 1221.  Accordingly, this court must examine whether the

19

20 _____
   failure to set his term has, by de facto, set his term at maximum life."  (Id. at p.1)  In addition,
21 petitioner argues that the Board's failure to find him suitable for parole violated various
   provisions of state law.  Many of petitioner's arguments based on state law have been rejected by
22 the California Supreme Court which has held, for example, that the Board is not required to refer
   to sentencing matrices or to compare other crimes of the same type in deciding whether a
23 prisoner is suitable for parole.  In re Dannenberg, 34 Cal. 4th 1061, 1084, 1098 (2005); see also
   In re Lawrence, 44 Cal. 4th 1181, 1217, 1221 (2008).  More importantly for purposes of this
24 federal habeas corpus action, petitioner has cited no federal authority for the proposition that the
   Due Process Clause requires a state parole board to either set a parole date where it believes a
25 prisoner poses an unreasonable risk of danger to society or to engage in a comparative analysis
   before denying parole suitability.  In short, petitioner's arguments that the Board or the state
26 courts erred in applying state law in determining his release date are not cognizable in this federal
   habeas corpus proceeding.  Estelle, 502 U.S. at 67-68.

1   deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and

2   therefore violated due process.

3          Because "parole-related decisions are not part of the criminal prosecution, the full

4   panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

5   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

6   citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

7   process is satisfied in the context of a parole hearing where a prisoner is afforded notice of the

8   hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the

9   denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v. Brewer, 408 U.S.

10  471, 481 (1972) (describing the procedural process due in cases involving parole issues).

11  Violation of state mandated procedures will constitute a due process violation only if the

12  violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

13         In California, the setting of a parole date for a state prisoner is conditioned on a

14  finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

15  requirements of due process in the parole suitability setting are satisfied "if some evidence

16  supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

17  445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v.

18  Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence"

19  standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at

20  456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if

21  there is any evidence in the record that could support the conclusion reached by the factfinder.

22  Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v.

23  McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

24  decision must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler,

25  974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

26  require examination of the entire record, independent assessment of the credibility of witnesses,

1  or the weighing of evidence.  <u>Toussaint</u>, 801 F.2d at 1105.  The question is whether there is any

2  reliable evidence in the record that could support the conclusion reached.  <u>Id.</u>

3           When a federal court assesses whether a state parole board's suitability

4  determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

5  statutes and regulations governing parole suitability determinations in the relevant state."  <u>Irons</u>

6  <u>v. Carey</u>, 505 F.3d 846, 851 (9th Cir. 2007).  Accordingly, this court must

7           look to California law to determine the findings that are necessary
           to deem a prisoner unsuitable for parole, and then must review the
8           record in order to determine whether the state court decision
           holding that these findings were supported by "some evidence" in
9           [petitioner's] case constituted an unreasonable application of the
           "some evidence" principle articulated in <u>Hill</u>.
10

11  <u>Id.</u>  In California, the overriding concern in determining parole suitability is public safety.  <u>In re</u>

12  <u>Dannenberg</u>, 34 Cal. 4th at 1086.  This "core determination of 'public safety' . . . involves an

13  assessment of an inmate's <u>current</u> dangerousness."  <u>In re Lawrence</u>, 44  Cal. 4th at 1205

14  (emphasis in original).  Accordingly, in California

15           when a court reviews a decision of the Board or the Governor, the
           relevant inquiry is whether some evidence supports the decision of
16           the Board or the Governor that the inmate constitutes a current
           threat to public safety, and not merely whether some evidence
17           confirms the existence of certain factual findings.

18  <u>In re Lawrence</u>, 44  Cal. 4th at 1212 (citing <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 658 (2002); <u>In re</u>

19  <u>Dannenberg</u>, 34 Cal. 4th at 1071; and <u>In re Lee</u>, 143 Cal. App. 4th 1400, 1408 (2006)).[3]

20           In recent years the Ninth Circuit Court of Appeals has been called upon to address

21  the issues raised by petitions such as that now pending before this court in three significant cases,

22  each of which will be discussed below.  First, in <u>Biggs</u>, the Ninth Circuit Court of Appeals

23

24           [3] Under California law, the Board is not to engage in a comparative analysis of the period
   of confinement being served by other inmates for similar crimes.  <u>In re Lawrence</u>, 44 Cal. 4th at
25   1217; <u>In re Dannenberg</u>, 34 Cal. 4th at 1070-71.  Rather, the suitability determination is to be
   individualized and is to focus upon the public safety risk currently posed by the particular
26   offender.  (<u>Id.</u>)

1    recognized that a continued reliance on an unchanging factor such as the circumstances of the

2    offense could at some point result in a due process violation.[4]  While the court in Biggs rejected

3    several of the reasons given by the Board for finding the petitioner in that case unsuitable for

4    parole, it upheld three:  (1) petitioner's commitment offense involved the murder of a witness;

5    (2) the murder was carried out in a manner exhibiting a callous disregard for the life and

6    suffering of another; and (3) petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.

7    However, the court in Biggs cautioned that continued reliance solely upon the gravity of the

8    offense of conviction and petitioner's conduct prior to committing that offense in denying parole

9    could, at some point, violate due process.  In this regard, the court observed:

10           As in the present instance, the parole board's sole supportable
              reliance on the gravity of the offense and conduct prior to
11            imprisonment to justify denial of parole can be initially justified as
              fulfilling the requirements set forth by state law.  Over time,
12            however, should Biggs continue to demonstrate exemplary
              behavior and evidence of rehabilitation, denying him a parole date
13            simply because of the nature of Biggs' offense and prior conduct
              would raise serious questions involving his liberty interest in
14            parole.

15    Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

16    unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

17    contrary to the rehabilitative goals espoused by the prison system and could result in a due

18    process violation."  Id. at 917.

19           In Sass, the Board found the petitioner unsuitable for parole at his third suitability

20    hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

21    461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

22    unchanging factors violated due process.  The court disagreed, concluding that these factors

23    /////

24

25        [4]  That holding has been acknowledged as representing the law of the circuit.  Irons v.
      Carey, 505 F.3d 846, 853 (9th Cir. 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1129
26    (9th Cir. 2006).

1  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

2  provided the following explanation for its holding:

3          While upholding an unsuitability determination based on these
           same factors, we previously acknowledged that "continued reliance
4          in the future on an unchanging factor, the circumstance of the
           offense and conduct prior to imprisonment, runs contrary to the
5          rehabilitative goals espoused by the prison system and *could* result
           in a due process violation." Biggs, 334 F.3d at 917 (emphasis
6          added).  Under AEDPA it is not our function to speculate about
           how future parole hearings could proceed. Cf. id.  The evidence of
7          Sass' prior offenses and the gravity of his convicted offenses
           constitute some evidence to support the Board's decision.
8          Consequently, the state court decisions upholding the denials were
           neither contrary to, nor did they involve an unreasonable
9          application of, clearly established Federal law as determined by the
           Supreme Court of the United States.  28 U.S.C. § 2254(d).

10

11  Id.

12          In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

13  stating as follows:

14          Because the murder Sass committed was less callous and cruel than
           the one committed by Irons, and because Sass was likewise denied
15          parole in spite of exemplary conduct in prison and evidence of
           rehabilitation, our decision in Sass precludes us from accepting
16          Iron's due process argument or otherwise affirming the district
           court's grant of relief.

17
           We note that in all the cases in which we have held that a parole
18          board's decision to deem a prisoner unsuitable for parole solely on
           the basis of his commitment offense comports with due process,
19          the decision was made before the inmate had served the minimum
           number of years required by his sentence.  Specifically, in Biggs,
20          Sass, and here, the petitioners had not served the minimum number
           of years to which they had been sentenced at the time of the
21          challenged parole denial by the Board.  Biggs, 334 F.3d at 912;
           Sass, 461 F.3d at 1125.  All we held in those cases and all we hold
22          today, therefore, is that, given the particular circumstances of the
           offenses in these cases, due process was not violated when these
23          prisoners were deemed unsuitable for parole prior to the expiration
           of their minimum terms.

24
           Furthermore, we note that in Sass and in the case before us there
25          was substantial evidence in the record demonstrating rehabilitation.
           In both cases, the California Board of Prison Terms appeared to
26          give little or no weight to this evidence in reaching its conclusion

1      that Sass and Irons presently constituted a danger to society and
2      thus were unsuitable for parole.  We hope that the Board will come
     to recognize that in some cases, indefinite detention based solely
3      on an inmate's commitment offense, regardless of the extent of his
     rehabilitation, will at some point violate due process, given the
4      liberty interest in parole that flows from the relevant California
     statutes.  Biggs, 334 F.3d at 917.

5  Irons, 505 F.3d at 853-54.[5]

6          After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and

7  Irons, and for the reasons set forth below, this court concludes that petitioner is not entitled to

8  federal habeas relief with respect to his due process challenge to the Board's February 26, 2002,

9  decision denying him parole.

10             1.   Whether "some evidence" supports the Board's decision

11         When the Board read its decision to deny parole into the record, it began with its

12 "[n]umber one reason... the timing and gravity of the conviction offense itself, which was carried

13 out in a very callous manner, and for reasons which were trivial in relation to the gravity of the

14 offense." (Pet., Attach. A at 49.)  The Board summarized the facts of the offense, then listed

15 positive and negative factors of the petitioner's pre-conviction life.  (Id. at 49.)  It noted that

16 petitioner had no previous criminal record and was preparing to go to college at the time of the

17 crime, but he also had physically abused the victim prior to the offense and had "a problem with

18 substance abuse and drinking."[6]  (Id. at 49-50.)  The Board noted numerous post-conviction

19 factors that leaned in the petitioner's favor, including his vocational, educational and disciplinary

20 record.  (Id. at 50.)  The Board summarized these favorable factors by stating that "[h]is

21 institutional behavior... has been very good." (Id.)  It noted his participation in self-help programs

22

23        [5]  The California Supreme Court has also acknowledged that the aggravated nature of the
24 commitment offense, over time, may fail to provide some evidence that the inmate remains a
current threat to public safety.  In re Lawrence, 44 Cal. 4th at 1218-20 & n.20.

25        [6] While the record does reflect that petitioner admitted to and addressed a pre-conviction
26 drinking problem, nowhere is there any evidence of his abusing any other chemical substance
before or after the crime of conviction.

1    "including theology classes, AA and Spirituality Class, among others." (<u>Id.</u>) It noted that he has

2    "significant" family and vocational support outside of prison "which will assist him when he is

3    released on parole." (<u>Id.</u> at 51.) It also acknowledged a favorable psychological evaluation from

4    1999 and report prepared by a correctional counselor (CC-I) that praised the petitioner as a

5    "model prisoner." (<u>Id.</u>. at 50.) However, the Board focused on the correctional counselor's

6    statement in his report that "there seems to be a degree of uncertainty of [the petitioner's]

7    emotional maturity should he have another relationship if he were released at this time." (<u>Id.</u>. at

8    50-51.)[7] This concern expressed by petitioner's correctional counselor was the primary negative

9    post-conviction evidence that appeared relevant to the Board.

10        The court begins with the Board's "[n]umber one reason" for denying parole, i.e.,

11    "the timing and gravity of the commitment offense itself, which was carried out in a very callous

12    manner, and for reasons which are very trivial in relation to the offense." (<u>Id.</u> at 49.) In his due

13    process claim, petitioner argues that this was an arbitrary reason derived from a

14    mischaracterization of the commitment offense (<u>see</u> Pet., Ground 1 at 3; Ground 3 at 10); that the

15    record shows that he was not at the time of the hearing a danger to society (<u>see</u> Pet., Ground 3 at

16    12); and that the Board has improperly continued to rely on the nature of the offense and pre-

17    conviction factors to justify its refusal to grant parole, in the face of "an impeccable prison

18    record." (<u>Id.</u>, Ground 7 at 22-23). In analyzing such claims, the question is whether there is

19    "some evidence" to sustain the Board's decision. In addition, "the evidence underlying the

20    board's decision must have some indicia of reliability." <u>Jancsek</u>, 833 F.2d at 1390.

21        At the time of the parole hearing in question, petitioner had served more than

22    fifteen-years in prison, the minimum term of the sentence imposed for the second-degree murder

23

24        [7] The Board also noted the fact that both the Solano County District Attorney and the

25    Benicia Police Department opposed a finding of parole suitability. However, under <u>Hill</u>, district attorneys' and law enforcement officers' opinions, without more, cannot be considered "some

26    evidence" supporting the Board's decision. <u>Rosenkrantz v. Marshall</u>, 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal. 2006).

1   in his case.[8]  As noted above, this is of significance because the Ninth Circuit has suggested that

2   in cases where the prisoner has not served the minimum term for a conviction of murder at the

3   time of a parole hearing, the "particular circumstances" of the offense, which naturally and

4   statutorily informs the sentence given the prisoner, may by itself constitute "some evidence"

5   sufficient to deny parole without violating a petitioner's right to due process.  See Irons, 505 F.3d

6   at 853-54.  That is not to say that after the minimum term has been served that the aggravating

7   circumstances surrounding a conviction offense are irrelevant or that they cannot be considered

8   in denying parole.  As the California Supreme Court recently explained,

9               the statutory and regulatory mandate to normally grant parole to
            life prisoners who have committed murder means that, particularly
10           after these prisoners have served their suggested base terms, the
            underlying circumstances of the commitment offense alone rarely
11           will provide a valid basis for denying parole when there is strong
            evidence of rehabilitation and no other evidence of current
12           dangerousness.

13                                          *  *  *

14           [T]he aggravated nature of the crime does not in and of itself
            provide some evidence of current dangerousness to the public
15           unless the record also establishes that something in the prisoner's
            pre- or post-conviction history, or his or her current demeanor and
16           mental state, indicates that the implications regarding the
            prisoner's dangerousness that derive from his or her commission of
17           the commitment offense remain probative to the statutory
            determination of a continuing threat to public safety.

18

19   In re Lawrence, 44 Cal. 4th at 1211-14 (emphasis in original).

20           Nonetheless, because at the time of the February 26, 2002 hearing petitioner had

21   served more time in prison than the fifteen-year minimum term to which he was sentenced, the

22   gravity of his commitment offense alone cannot automatically suffice as "some evidence"

23

24           [8] The court's calculation that petitioner had served in excess of the minimum term of
    fifteen years includes the credit he received for actual time served prior to his sentencing on May
25   13, 1988 but does not include any so-called "good time" credits.  The credit for time actually
    served by petitioner is reflected in the abstract of judgment attached as Exhibit 1 to respondent's
26   answer.

                                              17

justifying the denial of parole.  On the other hand, if there is in the petitioner's post-conviction

record some evidence of current dangerousness to complement the Board's finding that the

petitioner's reason for second-degree murder (jealousy)[9] was trivial in relation to the gravity of

the offense, then the due process concerns that would be raised by reliance solely on the nature of

the commitment offense or on any other pre-conviction factors would be adequately addressed.

Id.

a.  Post-conviction evidence

It is undisputed that there is strong evidence of rehabilitation in this case.  The

Board appears to have concluded that, despite that record of self-improvement, petitioner's

psychological and mental development since his incarceration warranted denying parole.  Thus,

the Board stated in conclusion that,

> [petitioner] hasn't completed necessary programming, which is
> essential to his adjustment.  And that would be in the form of any
> self-help programs that might assist him in dealing with the
> causative factors of the commitment offense itself and the
> underlying issues.

(Pet., Attach. A at 52.)[10]  The Board had two pieces of evidence before it from which to draw this

conclusion.  First, the Board reviewed the opinion of correctional counselor, Mr. Curzon,

---

[9] Contrary to the position taken by petitioner, the Board's finding that the reason for the crime was trivial was not an unreasonable one.  The court does note that the Board may have de-emphasized other factors that also may have contributed to the petitioner's decision making on the day of the crime in question.  Those factors included having an abusive father at home and living in a  difficult domestic environment in the days preceding petitioner's commission of the murder.  (See Pet., Attach. A at 15-19.)  As noted above, one of the factors favoring a finding of suitability is that the prisoner committed his crime as the result of significant stress in his life.  Cal. Code Regs. tit. 15, § 2281(d).  It is undisputed that significant stress at least partially contributed to petitioner's lack of judgment when he committed the murder.  However, it is also undisputed that petitioner's suspicion that the victim was interested in other boys provided his immediate motivation for the crime.  As the Board found, that was a trivial reason in relation to the gravity of the offense.

[10] The Board reached this conclusion in denying parole for two years.  Petitioner challenges that decision in Ground 4 of his petition, addressed below.  For purposes of reviewing the decision to deny parole, the recommendation regarding continued self-help is closely associated with the evidence of the petitioner's emotional maturation in prison.

1  regarding petitioner's vocational and educational preparation and his success with self-help

2  programming.  (See Pet., Attach. A at 23.)  Second, the Board also reviewed petitioner's most

3  recent psychological evaluation prepared in April 1999, nearly three years before the hearing.

4  (See id. at 24-25.)[11]

5              As noted above, the correctional counselor's report stated as follows:

6              Rubio has prepared himself educationally and vocationally and has
              been, basically, a model prisoner.  However, there seems to be a
7              degree of uncertainty of his emotional maturity should he have
              another relationship if he were released at this time.  With this
8              uncertainty comes a moderate degree of threat to the public if he
              were released at this time.

9

10  (Id. at 23-24, 50-51.)[12]   In announcing its decision the Board relied in part on the correctional

11  counselor's assessment of petitioner's emotional maturity.  (Id. at 50.)  The Board also described

12  the 1999 psychological evaluation as "fairly supportive of release."  (Id. at 50.)[13]

13  ────────────────────

14       [11]  Neither of these documents has been included in the attachments and exhibits
     presented by the parties to this court.  Accordingly, the court's review of these reports in
15  determining whether there was "some evidence" supporting the Board's decision to deny parole
     is limited to the excerpts from the reports that were read into the record at petitioner's parole
16  suitability hearing.

17       [12]  At the outset of the hearing, petitioner's attorney informed the Board that petitioner had
     received the correctional counselor's report only five days earlier and that, according to
18  petitioner, it "contains numerous errors and is factually incorrect and does not incorporate the
     information that is available to any interviewer within the C-File."  (Id. at 3.)  Petitioner asked for
19  a 90-day continuance of the hearing so that he could formulate a written response to the report.
     (Id. at 8.)  That request was denied.  (Id.)  Later in the hearing, the Board gave the petitioner an
20  opportunity to "point out to us items in this report that you disagree with."  (Id. at 8, 24.)
     However, petitioner restricted his response to expressing his disagreement without further
21  explanation.  (Id. at 24.)

22       [13]  Earlier, the Board had read the following excerpt of petitioner's 1999 psychological
     evaluation into the record:
23
              Inmate Rubio does not suffer from a major mental disorder.
24              Violence potential is judged to be below average for this
              population of inmates.  Prognosis is favorable.  However, the threat
25              that the inmate poses on society if paroled would need to be made
              on other grounds than psychiatric or psychological.  It is
26              recommended that the inmate continue his vocational training and
              self-help and otherwise upgrading (inaudible) academically, which

1    There is some incongruity between the opinions expressed in these two reports

2  that deserves discussion.  First, while both evaluations are professional opinions, one is an expert

3  opinion while the other is lay.  The psychologist's expert opinion supported release, as the Board

4  itself recognized.  However, that psychological evaluation also concluded that the assessment of

5  "the threat that the inmate poses on society if paroled would need to be made on other grounds

6  than psychiatric or psychological."  (Id. at 25.)   The implication of the psychologist's statement

7  is that while some other grounds may have existed for concluding that petitioner was not suitable

8  for release in 1999, there were no psychological or psychiatric grounds upon which to rely in

9  reaching that conclusion.

10    Pointing to the 1999 psychological report and his model behavior during the years

11  following it, petitioner challenges the correctional counselor's opinion regarding his emotional

12  maturity.  Specifically, he argues that "[s]taff counselors are not authorized to make such an

13  assessment."  (Pet., Ground 5 at 17.)[14]  Petitioner cites to the CDCR's Operations Manual, which

14  states that the clinical psychological evaluations required for every parole hearing must be

15  prepared by a qualified psychologist or a qualified CC-II counselor.  See CDCR Operations

16  Manual §§ 62090.14 and 62090.14.1.  Petitioner argues that Mr. Curzon was only a level CC-I

17  counselor at the time of the challenged parole hearing, making him unqualified as a matter of

18

19          are all thought to be helpful in moving toward a proper re-
20          socialization and internalization of emotional, social values.

21  (See Pet., Attach. A at 24-25.)

22    [14] Petitioner puts his argument that the correctional counselor lacked the qualifications to
    assess his state of mind in the context of a claim that he received ineffective assistance of
23  counsel.  (See Pet., Ground 5.)  He argues that his lawyer performed deficiently when he did not
    object to the inclusion of the counselor's opinion in the record.  (See Pet., Ground 5 at 17.)  The
24  Sixth Amendment's guarantee of effective assistance of counsel does not extend to parole
    hearings and, therefore, petitioner is not entitled to relief on his ineffective assistance of counsel
25  claim.  Dorado v. Kerr, 454 F.2d 892, 897 (9th Cir. 1972).  To the extent that some points made
    by petitioner in support of that claim inform the question of whether "some evidence" existed to
26  support the Board's decision, the court addresses those points in the context of the petitioner's
    core due process claim.

1    prison policy to render an opinion on petitioner's psychological state.  According to petitioner,

2    this lack of qualification calls into question the reliability of the counselor's "emotional maturity"

3    comment as "some evidence" that the petitioner still posed a threat sufficient to deny him parole

4    in 2002.  Petitioner contends that if there is no "indicia of reliability" in the counselor's

5    statement, then the only post-conviction evidence that the Board relied upon cannot stand as

6    "some evidence" supporting its decision.

7              Because Mr. Curzon was only a level CC-I counselor at the time of the hearing,

8    the court agrees that he was not qualified to submit the required  psychological evaluation to the

9    Board.  However, that is not what Mr. Curzon did here.  Moreover, the Board's consideration of

10   his opinion as petitioner's correctional counselor did not result in a due process violation.

11   Petitioner's argument that Curzon's expression of concern regarding petitioner's "emotional

12   maturity," "overrules" the psychologist's 1999 evaluation  is unpersuasive.[15]  A close look at the

13   psychologist's opinion reflects a distinction between petitioner's psychological state and his

14   "emotional maturity" which helps to  reconcile the apparent contradiction between these two

15   pieces of evidence.  After stating that the petitioner "does not suffer from a major mental

16   disorder" and recommending that an assessment of the threat posed by his release be made on

17   other grounds, the psychologist also recommended that  petitioner continue his vocational,

18   educational and self-help programming, "which are all thought to be helpful in moving toward a

19   proper re-socialization and internalization of emotional, social values."  (Pet., Attach. A at 24-25)

20   (emphasis added).  This observation by the psychologist suggests that while no major

21   psychological deficiencies were present, the petitioner was still, in the psychologist's opinion,

22   maturing emotionally in 1999 but had not reached such a level of maturity that would justify

23   ending his rehabilitation in prison.  In that context, the correctional counselor's concern

24   _____

25        [15] Nor is a petition for writ of habeas corpus the proper vehicle to request, as the
     petitioner does in his application, an order from the court requiring the Board "to stop accepting
26   Counselor evaluations as expert witness testimony that overrules Psychiatric Evaluation, expert
     testimony."  (Pet., Ground 5 at 17.)

1   regarding petitioner's emotional maturity in 2002 directly addresses the non-psychological

2   factors (arguably including "emotional maturity") suggested in the psychologist's 1999

3   assessment.  In this way the counselor's observation can be seen to follow the psychologist's

4   evaluation rather than to overrule it.  The psychologist's evaluation supports, at least tacitly, the

5   counselor's opinion regarding some risk posed to the public by petitioner's release on parole

6   because of the "uncertainty of his emotional maturity should he have another relationship if he

7   were released to parole."

8            The counselor's expressed concerns also hearken back to petitioner's commitment

9   offense and helps explain the Board's recommendation that the petitioner continue "dealing with

10  the causative factors of the commitment offense itself and the underlying issues."  (Id. at 52.)

11  The commitment offense resulted from an eighteen-year-old's tragically immature reaction

12  against the victim when he suspected her of being interested in other boys.  The counselor's

13  concern thus informed and supported the Board's "number one reason" for its decision, which

14  was the gravity of the crime and the triviality of the petitioner's reason for committing it.  The

15  correctional counselor's report aided the Board in the inquiry as to "whether the circumstances of

16  the commitment offense, when considered in light of other facts in the record, are such that they

17  continue to be predictive of current dangerousness many years after commission of the offense."

18  In re Lawrence, 44 Cal. 4th at 1221.[16]

19           Petitioner also presents a separate due process argument, alleging the denial of "a

20  complete and meaningful review of his petition."  (Pet., Ground 7 at 19.)  This argument focuses

21  on the Solano County Superior Court's statement that "the nature of the offense, alone, can

22  constitute a sufficient basis for denying parole."  (Pet., Attach. entitled "Previous Court Orders,"

23

---

24       [16]  Obviously a first-level correctional counselor's opinion regarding a petitioner's
     emotional state is not as reliable, or desirable, as an updated evaluation by a qualified
25   psychologist – something from which the Board, the petitioner and this court would have
     profited.  But in this case it is some post-conviction evidence that the petitioner still posed a risk
26   to the public if released in February of 2002, when viewed as a part of the whole record and in
     light of the offense of conviction.

1   Solano Superior Court Order at 2.)[17]   Petitioner contends that the record "does not contain any

2   evidence that could support a finding that the nature of the Petitioner's offense alone renders

3   hi[m] unsuitable for parole."  (Pet., Ground 7 at 20.)  This court agrees that because petitioner

4   had served in excess of his minimum term of imprisonment, reliance solely on the nature of the

5   commitment offense to deny him parole would raise serious questions involving his liberty

6   interest in parole.  See Irons, 505 F.3d at 854; Biggs, 334 F.3d at 917; see also In re Lawrence,

7   44  Cal. 4th at 1218-20 & n.20.[18]   However, because there was "some evidence" other than the

8   nature of the crime to justify a conclusion that the petitioner was unsuitable for parole at his

9   second subsequent hearing, the argument advanced by petitioner here does not state a ground on

10   which habeas relief can be granted at this time.[19]

11          The Board's 2002 decision to deny petitioner parole was supported by some

12   evidence with an indicia of reliability.  Accordingly, petitioner is not entitled to relief on his

13   claim that the Board's finding of unsuitability his right to due process.

14                  2.  Whether the Board held petitioner's silence against him

15          The petitioner exercised his right not to discuss the facts of the conviction offense

16   at the 2002 hearing.  He argues that the Board held his silence against him "on the pretext of

17   

18   [17]  This conclusion reached by the Solano County Superior Court is inconsistent with more recent pronouncements of the Ninth Circuit and even those of the California Supreme

19   Court.

20   [18] Even more recently a panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the

21   unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the

22   petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Ninth Circuit Court of Appeals decided to rehear that case en banc.  Hayward v. Marshall, 527 F.3d

23   797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

24   [19] Petitioner also argues that relying on the nature of the crime of conviction as a basis for denying parole "is double jeopardy." (Pet., Attach. A at 21.)  Since parole is part of the original

25   sentence, adverse decisions concerning parole do not constitute an additional punishment for the original crime.  See United States v. Brown, 59 F.3d 102, 104-05 (9th Cir. 1995).  Therefore,

26   petitioner is not entitled to relief with respect to any claim alleging a violation of his right to be free from twice being placed in jeopardy for the same offense conduct.

23

1    determining 'true remorse.'" (Pet., Ground 2 at 8.)  Petitioner claims the Board's action

2    implicates California Penal Code § 5011(b), which states that the Board "shall not require, when

3    setting parole dates, an admission of guilt for which any inmate was committed."

4           The petitioner first argued this point in his administrative appeal from the denial

5    of parole.  The Board of Prison Terms' Office of Policy and Appeals rejected the argument,

6    observing that "there is nothing in the panel's decision that references the prisoner's reluctance to

7    speak to the life offense."  (Pet., Attach. D at 3.)  However, this observation ignores the Board's

8    clear reference to the petitioner's silence at the conclusion of the parole hearing:

9           PRESIDING COMMISSIONER HEPBURN:

10          Mr. Rubio, the gravity of the crime (inaudible).  I'm also concerned
            with your version of the offense here.  I would like to have talked
11          to you.  It's certainly your right to not talk about the crime, but the
            version I'm left with is what it says in the file here, and it doesn't –
12          the physical evidence and the circumstances don't make sense to
            me with your – with your version of what occurred, and I'd like –
13          would have liked to explore that with you.  And you might
            consider doing that sometime because I'm sure future Panels are
14          going to have the same questions that I have.  And that causes me
            concern for your level of remorse, because if you're not accepting
15          responsibility for what you actually did, then remorse is
            meaningless.  If you have remorse for you actually did, then that's
16          true remorse.  I can't determine that from what we have on file
            here.  That's my comment.

17

18   (Pet., Attach. A at 52-53.)   This statement by the presiding commissioner at petitioner's parole

19   hearing is also contrary to evidence contained elsewhere in the record that petitioner had, in fact,

20   expressed remorse for the crime.

21          Nonetheless, petitioner has provided this court with no authority in support of the

22   proposition that the statutory mandate under state law comprises a federal right to due process on

23   which habeas relief could be granted.  Moreover, the California Supreme Court has found it

24   unnecessary to "consider the technical validity" of a similar argument, brought as a state law

25   claim, where an inmate claimed that the Board violated § 5011(b) by denying parole on the basis

26   that he did not accept full responsibility for the crime.  In re Dannenberg, 34 Cal. 4th at 1098-99

1   (observing that the Board's finding was merely "peripheral to its decision and did not affect the

2   outcome").  The same is true here.  Because there was, as discussed above, "some evidence"

3   supporting the Board's decision to deny parole in 2002, the court cannot say that the presiding

4   commissioner's comment regarding petitioner's silence was determinative of the Board's

5   decision.  Accordingly, this is not a ground on which federal habeas relief can be granted.

6                            C.   The two-year denial of parole

7           Petitioner claims that "[a] one-year denial is the maximum permitted under Penal

8   Code § 3041.5(b)(2) and the Board violated Rubio's rights to due process and equal protection

9   under the law, when it denied parole for two years."  (Pet., Ground 4 at 14.)   As stated above,

10   violation of state mandated procedures will constitute a due process violation only if the violation

11   causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.  Here, petitioner's claim does not

12   even allege a violation of a state mandated procedure and actually misstates the statutory

13   provision at issue.  At the time of the Board's decision, California Penal Code § 3041.5(b)(2)(A)

14   stated that the Board could set a two-year denial "after any hearing at which parole is denied if

15   the board finds that it is not reasonable to expect that parole would be granted at a hearing during

16   the following year and states the bases for the finding."  Here, the Board did give the following

17   "specific reasons" for its decision to deny petitioner parole for two years: (1) the "timing and

18   gravity of the conviction offense" and (2) the finding that petitioner "hasn't completed necessary

19   programming, which is essential to his adjustment.  And that would be in the form of any self-

20   help programs that might assist him in dealing with the causative factors of the commitment

21   offense itself and the underlying issues."  (Pet., Attach. A at 51-52.)  Because the Board

22   followed the state statutory procedure, there can be no due process violation.

23           There is also no federal equal protection guarantee implicated by petitioner's

24   claim.  One alleging an equal protection violation in the parole context must demonstrate that he

25   was treated differently from other similarly situated prisoners and that the Board lacked a rational

26   basis for its decision.  McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett,

1   924 F.2d 829, 835 (9th Cir. 1991).  Petitioner has failed to show that any other inmate who was

2   similarly situated to him was denied parole for only one year.  He also has failed to show that the

3   reasons stated by the Board did  not provide a rational basis for the two-year denial.

4   Accordingly, petitioner is not entitled to relief on his claim that his equal protection rights were

5   violated by the Board's conclusion that he was not suitable for parole for two years.

6                    D.   The Americans with Disabilities Act

7                    Next, petitioner claims that the Board violated the Americans with Disabilities

8   Act (ADA) because "it relied in part on petitioner's admitted alcohol abuse history to deny him

9   parole."[20]  (Pet. at 18.)  Claims brought pursuant to the ADA are cognizable in habeas corpus

10  actions.  Bogovich v. Sandoval, 189 F.3d 999, 1004 (9th Cir. 1999).  On the other hand, "[t]he

11  parole board... undeniably does have legitimate penological interests in considering [parole

12  candidates'] substance abuse backgrounds during the individualized inquiry for parole

13  suitability."  Thompson v. Davis, 295 F.3d 890, 898 n.4 (9th Cir. 2002).  Here, while the Board

14  did mention petitioner's history of alcohol abuse in its decision, there is no indication in the

15  record that the petitioner's pre-conviction history of alcohol abuse was a determinative factor in

16  the Board's decision to deny parole.  Moreover, there was other evidence concerning the

17  petitioner's lack of emotional maturity that supported the decision to deny parole in 2002.  Thus,

18  the Board did not rely solely on petitioner's pre-conviction alcohol abuse as a basis for denying

19  him parole.  Therefore petitioner's ADA claim does not state a basis on which relief could be

20  granted.

21  /////

22  /////

23  _____

24  [20] Petitioner presents a similar argument in his third claim where he alleges "[t]he Board
    decision partially rests on the conclusion that Rubio's pre-commitment history is peppered with
25  unstable social history, substance abuse and drinking."  (Pet., Ground 5 at 9.)  Even accepting
    that characterization of the Board's decision as accurate, petitioner is not entitled to habeas relief.
26  As discussed above, there was some evidence in petitioner's post-conviction record supporting
    that decision and the mere mention of petitioner's pre-conviction history is not a basis for relief.

E.   Claims alleged in the traverse

Petitioner's traverse has a section headed "Further Allegations" centering on the grant of parole he received in his third subsequent hearing on November 28, 2005, and the reversal of that decision by the full Board on February 22, 2006.  (See Traverse, Attach. B.)  The stated reason for that reversal was the full Board's finding that the victim's next of kin had not been notified of the hearing, a procedural deficiency that the full Board construed as "an error of law which could result in a different decision upon rehearing."  (Id.)

Petitioner argues that the reversal of the decision to grant parole by the full Board shows: (1) that he was treated differently from prisoners whose victims' next of kin do not appear at a hearing after being notified; and (2) that "the executive's implementation of the parole system in California" has "arbitrarily established a policy of almost never permitting parole."  (Traverse, ¶ 9.)  He characterizes the allegedly arbitrary executive policy as an impermissible ex post facto application of policy against him.

Petitioner's challenges to this third parole decision, first set forth in his traverse, have no bearing on the merits of the petition now before the court.  Claims raised for the first time in a traverse are not cognizable bases for relief.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for relief).  The court may address only the petition before it, which challenges the denial of parole at petitioner's  hearing of February 26, 2002.  The full Board's reversal of the grant of parole in 2005 can only be challenged in this court by a separate, timely filed federal petition for writ of habeas corpus.[21]

---

[21] This is a close case with respect to the Board's 2002 decision to deny parole.  The counselor's concern about the risk posed by petitioner's release due to uncertainty with respect to his emotional maturity should he have another relationship, even when coupled with the psychologist's recommendation that petitioner continue programming in order to move toward re-socialization and internalization of emotional and social values, is a relatively thin reed upon which to deny parole in light of petitioner's pre-offense history and model conduct while in prison.  It suffices only under the minimally stringent "some evidence" standard applicable here.  If that record remained intact and the full Board in 2006 reversed a panel decision to grant

1    For all of the reasons set forth above, the petition now before the court states no

2    grounds upon which petitioner is entitled to relief at this time.  Therefore it will be recommended

3    that the petition be denied.

4                                              CONCLUSION

5    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

6    a writ of habeas corpus be denied.

7    These findings and recommendations are submitted to the United States District

8    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9    days after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12   shall be served and filed within ten days after service of the objections.  The parties are advised

13   that failure to file objections within the specified time may waive the right to appeal the District

14   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15   DATED: February 10, 2009.

16

17   _____

18   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

19   DAD:10
     rubi0638.hc

20

21

22

23

24

25   _____

26   petitioner parole based on a procedural deficiency caused by the Board's failure to notify the
     victim's next of kin of the hearing, an even more serious due process issue would be presented.

                                                 28