1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10    LEONARD PAUL RUBIO,

11              Petitioner,              No. CIV S-05-0638 LKK DAD P

12        vs.

13    JEANNE S. WOODFORD,                <u>ORDER AND</u>

14              Respondent.              <u>FINDINGS AND RECOMMENDATIONS</u>

15    _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California

18    Board of Parole Hearings (hereinafter "Board") to deny him parole at his second parole

19    consideration hearing on February 26, 2002, violated his rights to due process and equal

20    protection, his right to effective assistance of counsel, and the Americans with Disabilities Act

21    (ADA).  Also before the court is the petitioner's request for expansion of the record.  (Doc. No.

22    28).

23              On February 11, 2009, the undersigned filed findings and recommendations

24    recommending that petitioner be denied habeas relief.  (Doc. No. 26.)  In so recommending the

25    court concluded that the report of a correctional counselor provided some evidence supporting

26    the Board's 2002 decision to deny petitioner parole.  The undersigned also expressed concern

1

1   regarding "some incongruity" between the opinions expressed in the correctional counselor's

2   report and that set forth in a favorable 1999 psychological evaluation.  (Id. at 20.)   As the

3   undersigned noted in the initial findings and recommendations, neither the psychologist's

4   evaluation nor the correctional counselor's report were provided to the court by the parties.  (See

5   id. at 19 n.11.)   Accordingly, the court's review of these reports in determining whether there

6   was "some evidence" supporting the Board's decision to deny parole was limited to the excerpts

7   from the reports that were read into the record at petitioner's parole suitability hearing.  Based on

8   those excerpts of the hearing transcript, the court analyzed the reliability of the correctional

9   counselor's lay opinion in the context of the psychologist's expert opinion and concluded that

10  some evidence supported the Board's decision.  Id. at 21-22.

11          Petitioner filed timely objections to the February 11, 2009, findings and

12  recommendations.  (See Doc. No. 27.)  Petitioner's most serious objection was based in part on

13  an error in the transcript of the 2002 hearing conducted by the Board.  Specifically, petitioner has

14  now submitted a copy of the psychologist's evaluation demonstrating that the psychologist did

15  not recommend that the petitioner continue programs that were "helpful in moving toward a

16  proper re-socialization and internalization of emotional, social values."  The phrase "emotional,

17  social values" appears only in the transcript of the hearing before the Board.  It is not an accurate

18  reflection of the psychological evaluation which instead states that petitioner's continued

19  programming would be "helpful in moving toward a proper re-socialization and internalization of

20  traditional, social values."  (Pet'r's Req. for Expansion of the R., Ex. 3 at 7) (emphasis added).[1]

21

22          [1] The petitioner has submitted copies of the psychologist's evaluation and the
    correctional counselor's report as exhibits to his request for expansion of record.  (Doc. No. 28.)
23  The court will accept those reports and grant petitioner's request as a correction of the record.
    See Rule 7 of the Cases Governing 28 U.S.C. § 2254 (allowing the submission of "additional
24  materials relating to the petition"); see also Fed. R. Civ. P. 60(a) ("[a] court may correct a
    clerical mistake... whenever one is found in a judgment, order, or other part of the record").
25  The petitioner also requests that the record be augmented to include several other documents,
    including an addendum to the correctional counselor's report dated June 20, 2002.  However,
26  that addendum was authored four months after the 2002 parole hearing and there is no
    evidence suggesting that it was considered by the Board in reaching its decision to deny

1    This inaccuracy implicates one of the undersigned's findings in analyzing whether

2  there was "some evidence" supporting the Board's decision to deny petitioner parole.  In the

3  initial findings and recommendations the undersigned noted the repetition of the word

4  "emotional" in the psychologist's evaluation and the phrase "emotional maturity" in the

5  correctional counselor's report.  The undersigned found that, in the context of this repetition, "the

6  correctional counselor's observation can be seen to follow the psychologist's evaluation rather

7  than to overrule it."  (Findings and Recommendations of February 11, 2009, at 22.)  The

8  petitioner's objections clarifying the record demonstrates that the verbal parallel between the two

9  reports is non-existent.

10    Because the erroneous belief in the use of the word "emotional" in both reports

11  formed part of the factual premise of the undersigned's initial conclusion, this correction of the

12  record warrants revisiting the reports.  Revisiting the correctional counselor's opinion is

13  particularly appropriate because it is a lay opinion[2] less favorable to petitioner's release on parole

14  than the psychologist's and was the primary post-conviction evidence on which the Board

15  grounded its decision to deny petitioner release on parole.  Therefore the initial findings and

16  recommendations filed February 11, 2009 (Doc. No. 26) will be vacated.

17    Nonetheless, upon careful consideration of petitioner's objections, the record and

18  the applicable law, the undersigned will again recommend that petitioner's application for habeas

19  corpus relief be denied.

20                              PROCEDURAL BACKGROUND

21    Petitioner is confined pursuant to a judgment of conviction entered in the Solano

22  County Superior Court in 1988.  (Pet. at 2.)  A jury found petitioner guilty of one count of second

23

24  parole.  Accordingly, as to those additional documents, petitioner's request to expand the record
     will be denied.

25

26    [2] Contrary to the petitioner's suggestion in his objections, lay opinion may qualify as
     evidence if a court finds it to be reliable.  See Fed. R. Evid. 701.

1   degree murder, and it was determined that he used a firearm in the commission of the crime.

2   (Id.)  On May 12, 1988, petitioner was sentenced to a term of fifteen years to life in state prison

3   with the possibility of parole.  (Id.)  The Superior Court stayed the two-year sentencing

4   enhancement for the use of a firearm.  (Id.)  Petitioner was also given credit for time served (603

5   days plus 302 days, pursuant to California Penal Code § 4019).  (See Answer, Ex. 1 at 2.)

6          Petitioner's initial parole consideration hearing, held on June 1, 1999, resulted in a

7   denial of parole.  (Pet., Attach. D.)  A subsequent parole consideration hearing was held on

8   February 26, 2002.  (Pet., Attach. A, entitled "Hearing Transcripts.")  On that date, a two-

9   member panel of the Board  found petitioner not suitable and denied parole for two years.  (Id. at

10  49-53.)  Petitioner challenges that latter decision in this habeas action.

11         Petitioner filed an administrative appeal from the February 26, 2002, Board

12  decision on May 3, 2002.  (Pet., Attach. D, entitled "Administrative Appeal (CDC 1040) and

13  Decision.")  The Board's Office of Policy and Appeals denied petitioner's requests for relief,

14  except one.  In this regard, it agreed with petitioner that "the panel had insufficient evidence to

15  conclude that he needs therapy."  (Id. at 5.)  In this regard, the Office of Policy and Appeals

16  stated that,

17              [a] review of the prisoner's psychiatric/psychological reports reveal
                that the prisoner has no mental health disorder and there is no
18              recommendations [sic] for any form of therapy.  Therefore, the
                reference made regarding 'therapy' on page 52 of the Decision will
19              be deleted.

20  (Id.)

21         On February 27, 2004, petitioner filed a habeas petition challenging the 2002

22  parole denial in the Solano County Superior Court.  (Pet., at unnumbered 5.)  On March 4, 2004,

23  the court denied the petition.  (Pet., Attach. entitled "Previous Court Orders.")  Petitioner next

24  challenged the 2002 parole denial by submitting a habeas petition to the California Court of

25  Appeal for the First Appellate District.  (Id.)  The state appellate court summarily denied that

26  /////

4

1   petition on March 24, 2004.  (Id.)  Petitioner then filed a habeas petition with the California

2   Supreme Court that was summarily denied by order filed March 16, 2005.  (Id.)

3             Petitioner's federal habeas petition challenging the 2002 parole denial was

4   received for filing by this court on March 31, 2005.

5                                 ANALYSIS

6   I.  Standards of Review Applicable to Habeas Corpus Claims

7             A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

8   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

9   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

10   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

11   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

12   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

13   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

14   (1972).

15             This action is governed by the Antiterrorism and Effective Death Penalty Act of

16   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

17   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

18   habeas corpus relief:

19                     An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
20             not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the
21             claim

22                     (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
23             determined by the Supreme Court of the United States; or

24                     (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
25             State court proceeding.

26   /////

1   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

2   (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  .  If the state court's decision

3   does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

4   of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

5   also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

6   we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

7   error, we must decide the habeas petition by considering de novo the constitutional issues

8   raised.").

9           The court looks to the last reasoned state court decision as the basis for the state

10  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

11  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

12  federal habeas court independently reviews the record to determine whether habeas corpus relief

13  is available under section 2254(d).[3]  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

14  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

15  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds,

16  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

17  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

18  1167 (9th Cir. 2002).

19  II.  Petitioner's Claims

20          Petitioner challenges the Board's 2002 finding of parole unsuitability on the

21  following seven grounds: (1) the Board's failure to fix his term violates California Penal Code

22  § 3041 and the Due Process Clause of the United States Constitution; (2) the Board held

23

---

24          [3] Such is the case here.  The Solano County Superior Court's order denying petitioner's
    request for habeas relief contained no reasoning beyond cursory approval of the Board's decision.
25  (See Pet., Attach. entitled "Previous Court Orders.")  The California Court of Appeals for the
    First Appellate District and the California Supreme Court summarily denied the habeas petitions
26  submitted by petitioner.  (Id.)

1  petitioner's exercise of his right not to discuss his commitment offense against him; (3) the

2  Board's decision was arbitrary and violated his right to due process because there was no

3  evidence to support its finding that he was an unreasonable risk of danger to society; (4) the

4  Board has failed to establish and apply equal standards of evaluation and that the denial of parole

5  eligibility for two years violated his constitutional rights to due process and equal protection; (5)

6  he was denied effective assistance of counsel; (6) the Board violated his rights under the

7  Americans with Disabilities Act; and (7) he has been denied "complete and meaningful review of

8  his petition" in state court, in violation of the Fourteenth Amendment.

9        A.   The Board's decision and the applicable law

10            The Board commenced its decision denying petitioner parole by stating that the

11  panel had reviewed "all information received at the hearing and relied on the following

12  circumstances in concluding that the prisoner is not yet suitable for parole and would pose an

13  unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet.,

14  Attach. A, entitled "2002 Parole Hearing Transcript," p. 49.) The phrases "unreasonable risk of

15  danger to society" and "a threat to public safety" are derived from § 3041(b) of the California

16  Penal Code and § 2281(a) of Title 15 of the California Code of Regulations. Pursuant to the

17  Penal Code provision,

18            [t]he panel or board shall set a release date unless it determines that
            the gravity of the current convicted offense or offenses, or the
19            timing and gravity of current or past convicted offense or offenses,
            is such that consideration of the public safety requires a more
20            lengthy period of incarceration for this individual, and that a parole
            date, therefore, cannot be fixed at this meeting.
21

22  Cal. Penal Code § 3041(b).

23            The state regulation governing parole suitability findings for life prisoners states

24  as follows with regard to the statutory requirement of California Penal Code § 3041(b):

25  /////

26  /////

7

1

> Regardless of the length of time served, a life prisoner shall be
> found unsuitable for and denied parole if in the judgment of the
> panel the prisoner will pose an unreasonable risk of danger to
> society if released from prison.

2

3

4  Cal. Code Regs. tit. 15, § 2281(a).  The same regulation requires the Board to consider all

5  relevant, reliable information available regarding,

6

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

7

8

9

10

11  Cal. Code Regs. tit. 15, § 2281(b).

12          The regulation identifies circumstances that tend to show suitability or

13  unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

14  prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

15  committing crimes with a potential of personal harm to victims; the prisoner has experienced

16  reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

17  the presence of remorse or has given indications that he understands the nature and magnitude of

18  his offense; the prisoner committed his crime as the result of significant stress in his life; the

19  prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

20  the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

21  probability of recidivism; the prisoner has made realistic plans for release or has developed

22  marketable skills that can be put to use upon release; institutional activities indicate an enhanced

23  ability to function within the law upon release.  Id., § 2281(d).

24          The following circumstances tend to indicate unsuitability for release: the prisoner

25  committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

26  previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

1  a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

2  the offense; the prisoner has engaged in serious misconduct in prison.  Cal. Code Regs. tit. 15,

3  § 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an

4  especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or

5  killed in the same or separate incidents; the offense was carried out in a dispassionate and

6  calculated manner, such as an execution-style murder; the victim was abused, defiled or

7  mutilated during or after the offense; the offense was carried out in a manner that demonstrated

8  an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable

9  or very trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).

10             Under current state law, as recently clarified by the California Supreme Court,

> the determination whether an inmate poses a current danger is not
> dependent upon whether his or her commitment offense is more or
> less egregious than other, similar crimes.  (Dannenberg, supra, 34
> Cal. 4th at pp 1083-84 [parallel citations omitted].)  Nor is it
> dependent solely upon whether the circumstances of the offense
> exhibit viciousness above the minimum elements required for
> conviction of that offense.  Rather, the relevant inquiry is whether
> the circumstances of the commitment offense, when considered in
> light of other facts in the record, are such that they continue to be
> predictive of current dangerousness many years after commission
> of the offense.  This inquiry is, by necessity and by statutory
> mandate, an individualized one, and cannot be undertaken simply
> by examining the circumstances of the crime in isolation, without
> consideration of the passage of time or the attendant changes in the
> inmate's psychological or mental attitude. [citations omitted].

19  In re Lawrence, 44 Cal. 4th 1181, 1221 (2008).

20             In addressing the factors it considered in reaching its 2002 decision that petitioner

21  was unsuitable for parole, the Board stated as follows:

22       PRESIDING COMMISSIONER HEPBURN:

> Mr. Rubio, we did deny your parole for a two year period.  Let me
> read the decision to you.  The Panel reviewed all of the information
> received at the hearing and relied on the following circumstances
> in concluding that the prisoner is not suitable for parole and would
> pose an unreasonable risk of danger to society or a threat to public
> safety if released from prison.  Number one reason, of course, was
> the timing and gravity of the commitment offense itself, which was

9

carried out in a very callous manner, and for reasons which are very trivial in relation to the offense.  These conclusions were drawn from the Statement of Facts wherein the prisoner had an ongoing relationship with the victim in this case, Heather Dunn, and the fact that he abused her physically over a period of time.  That's in the record.  And was jealous.  He thought that she was dating other people.  He armed himself with a gun and went to the front of her school where he shot her and killed her.  He had no previous record.  He had been a student finishing up high school getting ready to go to college prior to his incarceration.  He did have a problem with substance abuse and drinking, as he has previously indicated, consuming large amounts of alcohol with his football buddies, and things of that nature.  His institutional behavior, on the other hand, has been very good.  He has – hasn't had a disciplinary since 1993.  He has improved himself educationally, taking college courses.  He's participated in self-help programs including theology classes, AA and Spirituality Class, among others.  He's done well in his work assignments.  He's upgraded himself vocationally.  Psychological evaluation completed by Dr. Duprey on 4/27/99 is fairly supportive of release.  CC1 completed his report.  Mr. Rubio did indicate that he does disagree with the conclusions by CC1 Curzon, C-U-R-Z-O-N, in his report, but there is an interesting comment Mr. Curzon makes in his report.  He writes that:

"Rubio has prepared himself educationally and vocationally and has been, basically, a model prisoner.  However, there seems to be a degree of uncertainty of his emotional maturity should he have another relationship if he were released at this time.  With this uncertainty comes a moderate degree of threat to the public if he were released at this time."

His parole plans appear to be in order.  He's got significant family support, certainly has vocational skills, job offers, things of that nature, which will assist him when he is released on parole.  In response to 3042 notices, we had a representative from the prosecuting agency, the District Attorney's Office in Solano, County, who was present at the hearing and voiced opposition to parole.  As I indicated, this is a two year denial.  In a separate decision, the Hearing Panel finds that the prisoner has been convicted of murder and it's not reasonable to expect that parole would be granted at a hearing during the next two years.  Specific reasons for this finding are as follows.  Timing and gravity of the commitment offense, which was carried out in a rather cruel manner for reasons which were trivial in relation to the gravity of the offense, which I have previously described.  Also, he hasn't completed necessary programming, which is essential to his adjustment.  And that would be in the form of any self-help programs that might assist him in dealing with the causative factors of the commitment offense itself and the underlying issues.  So, the Panel's recommendation is going to be that he remain disciplinary

1    free, to the extent that it's available, participate in self-help and
     therapy programs.  And that completes the reading of the decision.
2    Commissioner Thompson, do you have any comments you'd like
     to make?

3

4    DEPUTY COMMISSIONER THOMPSON:

5    No, thank you.

6    PRESIDING COMMISSIONER HEPBURN:

7    Mr. Rubio, the gravity of the crime (inaudible).  I'm also concerned
     with your version of the offense here.  I would like to have talked
8    to you.  It's certainly your right to not talk about the crime, but the
     version I'm left with is what it says in the file here, and it doesn't –
9    the physical evidence and the circumstances don't make sense to
     me with your – with your version of what occurred, and I'd like –
10   would have liked to explore that with you.  And you might
     consider doing that sometime because I'm sure future Panels are
11   going to have the same questions that I have.  And that causes me
     concern for your level of remorse, because if you're not accepting
12   responsibility for what you actually did, then remorse is
     meaningless.  If you have remorse for what you actually did, then
13   that's true remorse.  I can't determine that from what we have on
     file here.  That's my comment.  And that will complete this hearing
14   at 12:32 p.m.  And good luck to you, and here's a copy of the
     decision.

15   (Pet., Attach. A, at 49-53)

16        B.  Due Process

17            Petitioner's principal claim is that his right to due process was violated by the

18   Board's denial of parole.  The petitioner presents this due process claim in several different

19   grounds for relief in the petition.  Thus, he alleges that: (1) § 3041(b) of the California Penal

20   Code creates a liberty interest and a due process right to a presumptive parole release date and the

21   Board's failure to fix his term violates that right (Ground 1); (2) the Board held the petitioner's

22   exercise of his right not to discuss his commitment offense against him (Ground 2); (3) the denial

23   of parole was arbitrary because there was no evidence to support it (Ground 3); and (4)

24   "petitioner has been denied his right to a complete and meaningful review of his petition" in state

25   /////

26   /////

court (Ground 7).  (See Pet. at 1-23.)   The court addresses the merits of each of these versions of petitioner's core due process claim.[4]

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz

---

[4]  Petitioner also presents several state law claims.  For instance, he alleges that the Board must ensure that prison terms be "uniform."  (Pet., Ground 1 at 3.)  He also claims that California Penal Code § 3041 requires the Board to grant him a parole date because of its direction that one year prior to an inmate's minimum eligible parole date, a Board panel shall meet with the inmate and "shall normally" set a parole release date.  He claims that under this provision "the Board was required to fix his term at his initial hearing and that their continuous failure to set his term has, by de facto, set his term at maximum life."  (Id. at p.1.)  In addition, petitioner argues that the Board's failure to find him suitable for parole violated various provisions of state law.  Many of petitioner's arguments based on state law have been rejected by the California Supreme Court which has held, for example, that the Board is not required to refer to sentencing matrices or to compare other crimes of the same type in deciding whether a prisoner is suitable for parole.  In re Dannenberg, 34 Cal. 4th 1061, 1084, 1098 (2005); see also In re Lawrence, 44 Cal. 4th 1181, 1217, 1221 (2008).  More importantly, for purposes of this federal habeas corpus action, petitioner has cited no federal authority for the proposition that the Due Process Clause requires a state parole board to either set a parole date where it believes a prisoner poses an unreasonable risk of danger to society or to engage in a comparative analysis before denying parole suitability. In short, petitioner's claims that the Board erred under state law in denying him release or that the state courts erred in applying state law in reviewing that denial are not cognizable in this federal habeas corpus proceeding.  Estelle, 502 U.S. at 67-68.

v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; see also In re Lawrence, 44  Cal. 4th at 1204, 1210, 1221.  Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and therefore violated due process.

Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a parole hearing where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues). Violation of state mandated procedures will constitute a due process violation only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S. 445, 456 (1985)).  See also Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence" standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder.

1    <u>Powell</u>, 33 F.3d at 40 (citing <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987)); <u>Toussaint v.</u>

2    <u>McCarthy</u>, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's

3    decision must have some indicia of reliability." <u>Jancsek</u>, 833 F.2d at 1390.  <u>See</u> <u>also</u> <u>Perveler</u>,

4    974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not

5    require examination of the entire record, independent assessment of the credibility of witnesses,

6    or the weighing of evidence.  <u>Toussaint</u>, 801 F.2d at 1105.  The question is whether there is any

7    reliable evidence in the record that could support the conclusion reached.  <u>Id.</u>

8          When a federal court assesses whether a state parole board's suitability

9    determination was supported by "some evidence" in a habeas case, the analysis "is framed by the

10   statutes and regulations governing parole suitability determinations in the relevant state." <u>Irons</u>

11   <u>v. Carey</u>, 505 F.3d 846, 851 (9th Cir. 2007).  Accordingly, this court must

12
13
14
15
> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in <u>Hill</u>.

16   <u>Id.</u>  In California, the overriding concern in determining parole suitability is public safety.  <u>In re</u>

17   <u>Dannenberg</u>, 34 Cal. 4th at 1086.  This "core determination of 'public safety' . . . involves an

18   assessment of an inmate's <u>current</u> dangerousness."  <u>In re Lawrence</u>, 44  Cal. 4th at 1205

19   (emphasis in original).  Thus, in California

20
21
22
> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

23   <u>In re Lawrence</u>, 44  Cal. 4th at 1212 (citing <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 658 (2002); <u>In re</u>

24   <u>Dannenberg</u>, 34 Cal. 4th at 1071; and <u>In re Lee</u>, 143 Cal. App. 4th 1400, 1408 (2006)).[5]

25

26        [5] Under California law, the Board is not to engage in a comparative analysis of the period of confinement being served by other inmates for similar crimes.  <u>In re Lawrence</u>, 44 Cal. 4th at

1          In recent years the Ninth Circuit Court of Appeals has been called upon to address

2   the issues raised by petitions such as that now pending before this court in three significant cases,

3   each of which will be discussed below.  First, in Biggs, the Ninth Circuit Court of Appeals

4   recognized that a continued reliance on an unchanging factor such as the circumstances of the

5   offense could at some point result in a due process violation.[6]  While the court in Biggs rejected

6   several of the reasons given by the Board for finding the petitioner in that case unsuitable for

7   parole, it upheld three:  (1) petitioner's commitment offense involved the murder of a witness;

8   (2) the murder was carried out in a manner exhibiting a callous disregard for the life and

9   suffering of another; and (3) petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.

10  However, the court in Biggs cautioned that continued reliance solely upon the gravity of the

11  offense of conviction and petitioner's conduct prior to committing that offense in denying parole

12  could, at some point, violate due process.  In this regard, the court observed:

13              As in the present instance, the parole board's sole supportable
                reliance on the gravity of the offense and conduct prior to
14              imprisonment to justify denial of parole can be initially justified as
                fulfilling the requirements set forth by state law.  Over time,
15              however, should Biggs continue to demonstrate exemplary
                behavior and evidence of rehabilitation, denying him a parole date
16              simply because of the nature of Biggs' offense and prior conduct
                would raise serious questions involving his liberty interest in
17              parole.

18  Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

19  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

20  contrary to the rehabilitative goals espoused by the prison system and could result in a due

21  process violation."  Id. at 917.

22

23  1217; In re Dannenberg, 34 Cal. 4th at 1070-71.  Rather, the suitability determination is to be
    individualized and is to focus upon the public safety risk currently posed by the particular
24  offender.  (Id.)

25          [6] That holding has been acknowledged as representing the law of the circuit.  Irons v.
    Carey, 505 F.3d 846, 853 (9th Cir. 2007); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1129
26  (9th Cir. 2006).

1    In <u>Sass</u>, the Board found the petitioner unsuitable for parole at his third suitability

2 hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

3 461 F.3d at 1126.  Citing <u>Biggs</u>, the petitioner in <u>Sass</u> contended that reliance on these

4 unchanging factors violated due process.  The court disagreed, concluding that the cited factors

5 amounted to "some evidence" to support the Board's determination.  <u>Id.</u> at 1129.  The court

6 provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and *could* result
> in a due process violation." <u>Biggs</u>, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  <u>Cf. id.</u>  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses
> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

<u>Id.</u>

16    In <u>Irons</u> the Ninth Circuit sought to harmonize the holdings in <u>Biggs</u> and <u>Sass</u>,

17 stating as follows:

> Because the murder Sass committed was less callous and cruel than
> the one committed by Irons, and because Sass was likewise denied
> parole in spite of exemplary conduct in prison and evidence of
> rehabilitation, our decision in <u>Sass</u> precludes us from accepting
> Iron's due process argument or otherwise affirming the district
> court's grant of relief.
>
> We note that in all the cases in which we have held that a parole
> board's decision to deem a prisoner unsuitable for parole solely on
> the basis of his commitment offense comports with due process,
> the decision was made before the inmate had served the minimum
> number of years required by his sentence.  Specifically, in <u>Biggs</u>,
> <u>Sass</u>, and here, the petitioners had not served the minimum number
> of years to which they had been sentenced at the time of the
> challenged parole denial by the Board.  <u>Biggs</u>, 334 F.3d at 912;
> <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold
> today, therefore, is that, given the particular circumstances of the

16

1
2

> offenses in these cases, due process was not violated when these
> prisoners were deemed unsuitable for parole prior to the expiration
> of their minimum terms.

3
4
5
6
7
8

> Furthermore, we note that in <u>Sass</u> and in the case before us there
> was substantial evidence in the record demonstrating rehabilitation.
> In both cases, the California Board of Prison Terms appeared to
> give little or no weight to this evidence in reaching its conclusion
> that Sass and Irons presently constituted a danger to society and
> thus were unsuitable for parole.  We hope that the Board will come
> to recognize that in some cases, indefinite detention based solely
> on an inmate's commitment offense, regardless of the extent of his
> rehabilitation, will at some point violate due process, given the
> liberty interest in parole that flows from the relevant California
> statutes.  <u>Biggs</u>, 334 F.3d at 917.

9 <u>Irons</u>, 505 F.3d at 853-54.[7]

10          After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and

11 <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is not entitled to

12 federal habeas relief with respect to his due process challenge to the Board's February 26, 2002,

13 decision denying him parole.

14               1.   <u>Whether "some evidence" supports the Board's decision</u>

15          When the Board read its decision to deny petitioner parole into the record, it

16 began with its "[n]umber one reason... the timing and gravity of the conviction offense itself,

17 which was carried out in a very callous manner, and for reasons which were trivial in relation to

18 the gravity of the offense."  (Pet., Attach. A at 49.)  The Board summarized the facts of the

19 offense, then listed positive and negative factors of the petitioner's pre-conviction life.  (<u>Id.</u> at

20 49.)  It noted that petitioner had no previous criminal record and was preparing to go to college at

21 the time of his crime, but he also had physically abused the victim prior to the offense and had "a

22 /////

23 /////

24

25          [7]   The California Supreme Court has also acknowledged that the aggravated nature of the
26 commitment offense, over time, may fail to provide some evidence that the inmate remains a
current threat to public safety.  <u>In re Lawrence</u>, 44 Cal. 4th at 1218-20 & n.20.

problem with substance abuse and drinking.'"[8]  (<u>Id.</u> at 49-50.)  The Board noted numerous post-conviction factors that leaned in petitioner's favor, including his vocational, educational and disciplinary record.  (<u>Id.</u> at 50.)  The Board summarized these favorable factors by stating that "[h]is institutional behavior . . . has been very good" and noted petitioner's participation in self-help programs "including theology classes, AA and Spirituality Class, among others."  (<u>Id.</u>)  It also noted that petitioner has "significant" family and vocational support outside of prison "which will assist him when he is released on parole."  (<u>Id.</u> at 51.)  The Board acknowledged a favorable psychological evaluation from 1999 and report prepared by a correctional counselor (CC-I) that praised the petitioner as a "model prisoner." (<u>Id.</u> at 50.)   However, the Board focused on the correctional counselor's statement in his report that "there seems to be a degree of uncertainty of [the petitioner's] emotional maturity should he have another relationship if he were released at this time." (<u>Id.</u>. at 50-51.)[9]  This concern expressed by petitioner's correctional counselor was the primary negative post-conviction evidence that appeared relevant to the Board.

The court begins with the Board's "[n]umber one reason" for denying parole, i.e., "the timing and gravity of the commitment offense itself, which was carried out in a very callous manner, and for reasons which are very trivial in relation to the offense."  (<u>Id.</u> at 49.)  In claiming that his right to due process was violated, petitioner argues that this was an arbitrary reason to deny parole derived from a mischaracterization of his commitment offense (<u>see</u> Pet., Ground 1 at 3; Ground 3 at 10); that the record shows that he was not at the time of the hearing a danger to society (<u>see</u> Pet., Ground 3 at 12); and that the Board has improperly continued to rely on the

---

[8] While the record does reflect that petitioner admitted to a pre-conviction drinking problem, nowhere is there any evidence of his abusing any other chemical substance before or after the crime of conviction.

[9] The Board also noted the fact that both the Solano County District Attorney and the Benicia Police Department opposed a finding of parole suitability.  However, under <u>Hill</u>, district attorneys' and law enforcement officers' opinions, without more, cannot be considered "some evidence" supporting the Board's decision.  <u>Rosenkrantz v. Marshall</u>, 444 F. Supp. 2d 1063, 1080 n.14 (C.D. Cal. 2006).

1  nature of the offense and pre-conviction factors to justify its refusal to grant parole, in the face of

2  "an impeccable prison record."  (Id., Ground 7 at 22-23).  In analyzing such claims, the question

3  is whether there is "some evidence" to sustain the Board's decision.  In addition, "the evidence

4  underlying the board's decision must have some indicia of reliability."  Jancsek, 833 F.2d at

5  1390.

6        At the time of the parole hearing in 2002, petitioner had served more than fifteen

7  years in prison, the minimum term of the sentence imposed for his second-degree conviction.[10]

8  As noted above, the number of years served is significant because the Ninth Circuit has

9  suggested that in cases where the prisoner has not served the minimum term at the time of a

10 parole hearing, the "particular circumstances" of the offense, which naturally and statutorily

11 informs the sentence given the prisoner, may by itself constitute "some evidence" sufficient to

12 deny parole without violating a petitioner's right to due process.  See Irons, 505 F.3d at 853-54.

13 That is not to say that after the minimum term has been served that the aggravating circumstances

14 surrounding a conviction offense are irrelevant or that they cannot be considered in denying

15 parole.  As the California Supreme Court recently explained,

16         the statutory and regulatory mandate to normally grant parole to
           life prisoners who have committed murder means that, particularly
17         after these prisoners have served their suggested base terms, the
           underlying circumstances of the commitment offense alone rarely
18         will provide a valid basis for denying parole when there is strong
           evidence of rehabilitation and no other evidence of current
19         dangerousness.

20                              * * *

21         [T]he aggravated nature of the crime does not in and of itself
           provide some evidence of current dangerousness to the public
22         unless the record also establishes that something in the prisoner's
           pre- or post-conviction history, or his or her current demeanor and
23

24 _____

       [10] The court's calculation that petitioner had served in excess of the minimum term of
25 fifteen years includes the credit he received for actual time served prior to his sentencing on May
   13, 1988 but does not include any so-called "good time" credits.  The credit for time actually
26 served by petitioner is reflected in the abstract of judgment attached as Exhibit 1 to respondent's
   answer.

                                        19

> mental state, indicates that the implications regarding the
> prisoner's dangerousness that derive from his or her commission of
> the commitment offense remain probative to the statutory
> determination of a continuing threat to public safety.

In re Lawrence, 44 Cal. 4th at 1211-14 (emphasis in original).

Nonetheless, because at the time of the February 26, 2002 hearing petitioner had served more time in prison than the fifteen-year minimum term to which he was sentenced, the gravity of his commitment offense alone cannot automatically suffice as "some evidence" justifying the denial of parole. On the other hand, if there is in the petitioner's post-conviction record some evidence of current dangerousness to complement the Board's finding that the petitioner's reason for committing second-degree murder (jealousy)[11] was trivial in relation to the gravity of the offense, then the due process concerns that would be raised by reliance solely on the nature of the commitment offense or on any other pre-conviction factors would be adequately addressed. Id.

It is undisputed that there is strong evidence of rehabilitation in this case. The Board appears to have concluded that, despite that record of self-improvement, petitioner's psychological and mental development since his incarceration warranted denying parole. Thus, the Board stated in conclusion that

> [petitioner] hasn't completed necessary programming, which is
> essential to his adjustment. And that would be in the form of any
> self-help programs that might assist him in dealing with the

---

[11] Contrary to the position taken by petitioner, the Board's finding that the reason for the commission of the crime was trivial was not an unreasonable one. The court does note that the Board may have de-emphasized other factors that also may have contributed to the petitioner's decision-making on the day in question. Those factors included having an abusive father at home and living in a  difficult domestic environment in the days preceding the murder. (See Pet., Attach. A at 15-19.) As noted above, one of the factors favoring a finding of suitability is that the prisoner committed his crime as the result of significant stress in his life. Cal. Code Regs. tit. 15, § 2281(d). It is undisputed that significant stress at least partially contributed to petitioner's lack of judgment when he committed the murder. However, it is also undisputed that petitioner's suspicion that the victim was interested in other boys provided his immediate motivation for the crime. As the Board found, that was a trivial reason in relation to the gravity of the offense.

1        causative factors of the commitment offense itself and the
2        underlying issues.

3 (Pet., Attach. A at 52.)[12]  The Board had two pieces of evidence before it from which to draw this

4 conclusion.  First, the Board reviewed the opinion of correctional counselor, Mr. Curzon,

5 regarding petitioner's vocational and educational preparation and his success with self-help

6 programming.  (See Pet., Attach. A at 23.)  Second, the Board also reviewed petitioner's most

7 recent psychological evaluation prepared in April 1999, nearly three years before the hearing.

8 (See id. at 24-25.)

9        As noted above, the correctional counselor's report stated as follows:

10        Rubio has prepared himself educationally and vocationally and has
       been, basically, a model prisoner.  However, there seems to be a
11        degree of uncertainty of his emotional maturity should he have
       another relationship if he were released at this time.  With this
12        uncertainty comes a moderate degree of threat to the public if he
       were released at this time.
13

14 (Id. at 23-24, 50-51.)[13]  In announcing its decision, the Board relied in part on the

15 correctional counselor's assessment of petitioner's emotional maturity, while at the same

16 /////
17 /////
18 /////

___

[12]  The Board reached this conclusion in denying parole for two years.  Petitioner challenges that decision.  For purposes of reviewing the decision to deny parole, the Board's recommendation regarding continued self-help is closely associated with the evidence of the petitioner's emotional maturation in prison.

[13]  At the outset of the hearing, petitioner's attorney informed the Board that petitioner had received the correctional counselor's report only five days earlier and that it "contains numerous errors and is factually incorrect and does not incorporate the information that is available to any interviewer within the C-File." (Id. at 3.)  Petitioner asked for a 90-day continuance of the hearing so that he could formulate a written response to the report.  (Id. at 8.) That request was denied.  (Id.)  Later in the hearing, the Board provided petitioner an opportunity to "point out to us items in this report that you disagree with." (Id. at 8, 24-25.)  However, petitioner restricted his response to expressing his general disagreement with the report without further explanation.  (Id. at 24.)

1  time describing the 1999 psychological evaluation as "fairly supportive of release."  (Id.

2  at 50.)[14]

3          Both of these evaluations were professional opinions, one is an expert opinion

4  while the other is lay.  The psychologist's expert opinion supported release, as the Board itself

5  recognized.  However, that psychological evaluation also concluded that the assessment of "the

6  threat that the inmate poses on society if paroled would need to be made on other grounds than

7  psychiatric or psychological."  The implication of the psychologist's statement is that while some

8  other grounds may have existed for concluding that petitioner was not suitable for release in

9  1999, there were no psychological or psychiatric grounds upon which to rely in reaching that

10  conclusion.

11          Pointing to the 1999 psychological report and his model behavior during the years

12  following it, petitioner challenges the correctional counselor's opinion regarding his emotional

13  maturity.  Specifically, he argues that "[s]taff counselors are not authorized to make such an

14  assessment."  (Pet., Ground 5 at 17.)  Petitioner cites to the CDCR's Operations Manual, which

15  states that the clinical psychological evaluations required for every parole hearing must be

16  prepared by a qualified psychologist or a qualified CC-II counselor.  See CDCR Operations

17  Manual §§ 62090.14 and 62090.14.1.  Petitioner argues that Mr. Curzon was only a level CC-I

18  counselor at the time of the challenged parole hearing, making him unqualified as a matter of

19

20      [14]  Earlier, the Board had read the following excerpt of petitioner's 1999 psychological
    evaluation into the record:

21

22              Inmate Rubio does not suffer from a major mental disorder.
                Violence potential is judged to be below average for this
                population of inmates.  Prognosis is favorable.  However, the threat
23              that the inmate poses on society if paroled would need to be made
                on other grounds than psychiatric or psychological.  It is
24              recommended that the inmate continue his vocational training and
                self-help and otherwise upgrading (inaudible) academically, which
25              are all thought to be helpful in moving toward a proper re-
                socialization and internalization of emotional, social values.

26  (See Pet., Attach. A at 24-25.)

prison policy to render an opinion on petitioner's psychological state.  According to petitioner, this lack of qualification calls into question the reliability of the counselor's "emotional maturity" comment as "some evidence" that the petitioner still posed a threat sufficient to deny him parole in 2002.  Petitioner contends that if there is no "indicia of reliability" in the counselor's statement, then the only post-conviction evidence that the Board relied upon cannot stand as "some evidence" supporting its decision.[15]

      The undersigned finds that while the two reports are more distinct than originally perceived by the court, they are not at odds with one another.  In other words, petitioner's argument that the Board allowed the correctional counselor's opinion to "overrule" the psychologist's opinion remains unpersuasive.[16]  It is true that the correctional counselor's concern about the petitioner's emotional maturity expressed in 2002 no longer "directly addresses the non-psychological factors . . . suggested in the psychologist's 1999 assessment," as the undersigned initially found.  Id.  Nonetheless, there is still an indirect correlation.  The psychologist's report left a suitability assessment to be made on "other grounds than psychiatric

---

[15]  The petitioner presents his argument that the correctional counselor lacked the qualifications to assess his state of mind as a claim that he received ineffective assistance of counsel.  (See Pet., Ground 5.)  He argues that his lawyer performed deficiently when he did not object to the inclusion of the counselor's opinion in the record.  (See Pet., Ground 5 at 17.)  The Sixth Amendment's guarantee of effective assistance of counsel does not extend to parole hearings, and, therefore, petitioner is not entitled to relief on his ineffective assistance of counsel claim.  Dorado v. Kerr, 454 F.2d 892, 897 (9th Cir. 1972).  To the extent that some points made by petitioner in support of that claim inform the question of whether "some evidence" existed to support the Board's decision, the undersigned addresses those points in the context of the petitioner's core due process claim.

[16]  Nor is a petition for writ of habeas corpus the proper vehicle to request, as the petitioner does in his application, an order from the court requiring the Board "to stop accepting Counselor evaluations as expert witness testimony that overrules Psychiatric Evaluation, expert testimony." (Pet., Ground 5 at 17.)  However, the court notes that Exhibit 8 to the petitioner's request for expansion of the record reflects an interesting change in the practice of including threat assessments in correctional counselors' reports.  According to a memo from a deputy director of the CDCR dated August 5, 2004, Correctional Counselors were no longer required to include threat assessments of the sort presented in this case.  That directive post-dated the hearing at issue here by two-and-a-half years; therefore the change in policy cannot be considered in assessing whether Correctional Counselor Curzon's opinion is "some evidence" supporting the Board's decision.

or psychological." (Pet'r's Req. for Expansion of the R., Ex. 3, p. 7.)  The undersigned initially

found that non-psychological grounds "arguably includ[e] 'emotional maturity,'" and that finding

still applies.  (See Findings and Recommendations of February 11, 2009, p. 22.)

The correctional counselor's opinion speaks to another aspect of the record that

stands apart from the psychologist's evaluation of petitioner.  There is still a direct correlation

between the correctional counselor's opinion of the petitioner's "emotional maturity" and the

circumstances of the underlying offense that supports the Board's decision.  As the undersigned

initially observed,

> [t]he counselor's expressed concerns also hearken back to
> petitioner's commitment offense and helps explain the Board's
> recommendation that the petitioner continue "dealing with the
> causative factors of the commitment offense itself and the
> underlying issues."  The commitment offense resulted from an
> eighteen-year-old's tragically immature reaction against the victim
> when he suspected her of being interested in other boys.  The
> counselor's concern thus informed and supported the Board's
> "number one reason" for its decision, which was the gravity of the
> crime and the triviality of the petitioner's reason for committing it.
> The correctional counselor's report aided the Board in the inquiry
> as to "whether the circumstances of the commitment offense, when
> considered in light of other facts in the record, are such that they
> continue to be predictive of current dangerousness many years after
> commission of the offense."  In re Lawrence, 44 Cal. 4th at 1221.[17]

(Id. (citation to record omitted)).  This part of the undersigned's initial analysis is unaffected by

the correction of the record referred to at the outset.  It has equal force now and based upon that

/////

---

[17]  Likewise, the following observation still holds true:

> Obviously a first-level correctional counselor's opinion regarding a
> petitioner's emotional state is not as reliable, or desirable, as an
> updated evaluation by a qualified psychologist – something from
> which the Board, the petitioner and this court would have profited.
> But in this case it is some post-conviction evidence that the
> petitioner still posed a risk to the public if released in February of
> 2002, when viewed as a part of the whole record and in light of the
> offense of conviction.

(Findings and Recommendations of February 11, 2009, at p. 22, n.16.)

1  analysis the undersigned again finds that there was "some evidence" supporting the Board's

2  decision.

3  Obviously, the undersigned's original assessment that "[t]his is a close case with

4  respect to the Board's 2002 decision to deny parole" applies with even more force in light of the

5  correction of the record. (Id. at 27, n.21.) This case is even closer than initially presented, and

6  the "relatively thin reed" of the correctional counselor's concern for the petitioner's emotional

7  maturity is even thinner now that it has been somewhat decoupled from the psychologist's report.

8  (Id.) As the undersigned stated before, such evidence as a basis for the denial of parole "suffices

9  only under the minimally stringent 'some evidence' standard applicable here." (Id.)

10  In his objections to the initial findings and recommendations, petitioner states that

11  Correctional Counselor Curzon had minimal contact with him before drafting the suitability

12  assessment in connection with the parole hearing. (See Objections, pp. 1-2.) Petitioner suggests

13  that Curzon was not familiar enough with him to opine about his emotional maturity or make a

14  reliable threat assessment. However, the Board never heard this argument. The Board gave the

15  petitioner the opportunity to object to Curzon's report or to otherwise address the post-conviction

16  evidence that was before the Board, but petitioner did not raise the issue of Curzon's lack of

17  familiarity with him in an attempt to impeach the report's conclusion. (See Pet., Attach. A at 24-

18  25.) Nothing else in the record supports petitioner's argument in this regard. The same is true of

19  petitioner's argument that Dr. Dupre, the psychologist who authored the more favorable

20  assessment, has since told petitioner that his evaluation does not support Curzon's opinion. (See

21  Objections, pp. 2-3.) With nothing in the record to verify this representation, the court expresses

22  no opinion on its effect on the reliability of Curzon's report.

23  Finally, petitioner's separate due process claim in which he alleges that he was

24  denied "a complete and meaningful review of his petition," is still without merit. (Pet., Ground 7

25  at 19.) This argument focuses on the Solano County Superior Court's statement that "the nature

26  of the offense, alone, can constitute a sufficient basis for denying parole." (Pet., Attach. entitled

1  "Previous Court Orders," Solano Superior Court Order at 2.)[18]  Petitioner contends that the

2  record "does not contain any evidence that could support a finding that the nature of the

3  Petitioner's offense alone renders hi[m] unsuitable for parole." (Pet., Ground 7 at 20.)  The court

4  agrees that because petitioner had served in excess of his minimum term of imprisonment,

5  reliance solely on the nature of the commitment offense to deny him parole would raise serious

6  questions involving his liberty interest in parole.   See Irons, 505 F.3d at 854; Biggs, 334 F.3d at

7  917; see also In re Lawrence, 44  Cal. 4th at 1218-20 & n.20.[19]   However, because there was

8  "some evidence" in addition to the nature of the crime of conviction to justify a conclusion that

9  the petitioner was unsuitable for parole at the time of his 2002 hearing, the argument advanced

10  by petitioner here does not state a ground on which habeas relief can be granted at this time.[20]

11          When assessed under the applicable minimally stringent standard, the undersigned

12  concludes that the Board's 2002 decision to deny petitioner parole was supported by some

13  evidence with an indicia of reliability.  Accordingly, petitioner is not entitled to relief on his

14  claim that the Board's finding of unsuitability violated his right to due process.

15  /////

16  /////

17  ────────────

18  [18]  This conclusion reached by the Solano County Superior Court is inconsistent with more recent pronouncements of the Ninth Circuit as well as those of the California Supreme Court.

19

20  [19] Even more recently a panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the

21  unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Ninth

22  Circuit Court of Appeals decided to rehear that case en banc.  Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in Hayward is no longer citable precedent.

23

24  [20] Petitioner also argues that relying on the nature of the crime of conviction as a basis for denying parole "is double jeopardy." (Pet., Attach. A at 21.)  Since parole is part of the original

25  sentence, adverse decisions concerning parole do not constitute an additional punishment for the original crime.  See United States v. Brown, 59 F.3d 102, 104-05 (9th Cir. 1995).  Therefore,

26  petitioner is not entitled to relief with respect to any claim alleging a violation of his right to be free from twice being placed in jeopardy for the same offense conduct.

2.  <u>Whether the Board held petitioner's silence against him</u>

The petitioner exercised his right not to discuss the facts of the conviction offense at the 2002 hearing.  He argues that the Board held his silence against him "on the pretext of determining 'true remorse.'" (Pet., Ground 2 at 8.)  Petitioner claims the Board's action implicates California Penal Code § 5011(b), which states that the Board "shall not require, when setting parole dates, an admission of guilt for which any inmate was committed."

The petitioner first argued this point in his administrative appeal from the denial of parole.  The Board of Prison Terms' Office of Policy and Appeals rejected the argument, observing that "there is nothing in the panel's decision that references the prisoner's reluctance to speak to the life offense."  (Pet., Attach. D at 3.)  However, this observation ignores the Board's clear reference to the petitioner's silence at the conclusion of the 2002 parole hearing in the excerpt set forth below.

PRESIDING COMMISSIONER HEPBURN:

> Mr. Rubio, the gravity of the crime (inaudible).  I'm also concerned with your version of the offense here.  I would like to have talked to you.  It's certainly your right to not talk about the crime, but the version I'm left with is what it says in the file here, and it doesn't – the physical evidence and the circumstances don't make sense to me with your – with your version of what occurred, and I'd like – would have liked to explore that with you.  And you might consider doing that sometime because I'm sure future Panels are going to have the same questions that I have.  And that causes me concern for your level of remorse, because if you're not accepting responsibility for what you actually did, then remorse is meaningless.  If you have remorse for you actually did, then that's true remorse.  I can't determine that from what we have on file here.  That's my comment.

(Pet., Attach. A at 52-53.)  This statement by the presiding commissioner at petitioner's 2002 parole hearing is also contrary to evidence contained elsewhere in the record that petitioner had, in fact, expressed remorse for his crime.

Nonetheless, petitioner has provided this court with no authority in support of the proposition that the statutory mandate under state law comprises a federal right to due process on

27

1  which habeas relief could be granted.  Moreover, the California Supreme Court has found it

2  unnecessary to "consider the technical validity" of a similar argument, brought as a state law

3  claim, where an inmate argued that the Board violated § 5011(b) by denying parole on the basis

4  that he did not accept full responsibility for the crime.  In re Dannenberg, 34 Cal. 4th at 1098-99

5  (observing that the Board's finding was merely  "peripheral to its decision and did not affect the

6  outcome").  The same is true here.  As discussed above, there is "some evidence" supporting the

7  Board's decision to deny petitioner parole in 2002.  Accordingly, this court cannot say that the

8  presiding commissioner's comment regarding petitioner's silence with respect to the underlying

9  crime at the hearing was determinative of the Board's decision.  Therefore, this argument that the

10  Board violated state law is not a ground on which federal habeas relief can be granted.

11                        C.  The two-year denial of parole

12            Petitioner claims that "[a] one-year denial is the maximum permitted under Penal

13  Code § 3041.5(b)(2) and the Board violated Rubio's rights to due process and equal protection

14  under the law, when it denied parole for two years."  (Pet., Ground 4 at 14.)   As stated above,

15  violation of state mandated procedures will constitute a due process violation only if the violation

16  causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.  Here, petitioner's claim does not

17  even allege a violation of a state mandated procedure and actually misstates the statutory

18  provision at issue.  At the time of the Board's decision, California Penal Code § 3041.5(b)(2)(A)

19  stated that the Board could set a two-year denial "after any hearing at which parole is denied if

20  the board finds that it is not reasonable to expect that parole would be granted at a hearing during

21  the following year and states the bases for the finding."  Here, the Board did give the following

22  "specific reasons" for its decision to deny petitioner parole for two years: (1) the "timing and

23  gravity of the conviction offense" and (2) the finding that petitioner "hasn't completed necessary

24  programming, which is essential to his adjustment.  And that would be in the form of any self-

25  help programs that might assist him in dealing with the causative factors of the commitment

26  /////

                                        28

1  offense itself and the underlying issues." (Pet., Attach. A at 51-52.) Because the Board

2  followed the state statutory procedure, there can be no due process violation.

3       There is also no federal equal protection guarantee implicated by petitioner's

4  claim. One alleging an equal protection violation in the parole context must demonstrate that he

5  was treated differently from other similarly situated prisoners and that the Board lacked a rational

6  basis for its decision. McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett,

7  924 F.2d 829, 835 (9th Cir. 1991). Petitioner has failed to show that any other inmate who was

8  similarly situated to him was denied parole for only one year. He also has failed to show that the

9  reasons stated by the Board did not provide a rational basis for the two-year denial. Accordingly,

10 petitioner is not entitled to relief on his claim that his equal protection rights were violated by the

11 Board's conclusion that he was not suitable for parole for two years following his 2002 hearing.

12       D.   The Americans with Disabilities Act

13       Next, petitioner claims that the Board violated the Americans with Disabilities

14 Act (ADA) because "it relied in part on petitioner's admitted alcohol abuse history to deny him

15 parole."[21] (Pet. at 18.) Claims brought pursuant to the ADA are cognizable in habeas corpus

16 actions. Bogovich v. Sandoval, 189 F.3d 999, 1004 (9th Cir. 1999). However, "[t]he parole

17 board . . . undeniably does have legitimate penological interests in considering [parole

18 candidates'] substance abuse backgrounds during the individualized inquiry for parole

19 suitability." Thompson v. Davis, 295 F.3d 890, 898 n.4 (9th Cir. 2002). Here, while the Board

20 did mention petitioner's history of alcohol abuse in its decision, there is no indication in the

21 record that the petitioner's pre-conviction history of alcohol abuse was a determinative factor in

22

23       [21] Petitioner presents a similar argument in his third claim where he alleges "[t]he Board
24 decision partially rests on the conclusion that Rubio's pre-commitment history is peppered with
   unstable social history, substance abuse and drinking." (Pet., Ground 5 at 9.) Even accepting
   petitioner's characterization of the Board's decision as accurate, he is not entitled to habeas relief
25 on this ground. As discussed above, there was some evidence in petitioner's post-conviction
   record supporting that decision and the mere mention by the Board of petitioner's pre-conviction
26 history in its decision does not provide a basis for habeas relief.

1 the Board's decision to deny parole.  Moreover, as discussed above, there was other evidence

2 concerning the petitioner's lack of emotional maturity that supported the decision to deny parole

3 in 2002.  Therefore petitioner's ADA claim does not state a basis on which relief could be

4 granted.

5                E.   Claims alleged in the traverse

6            In his traverse, under the heading "Further Allegations," petitioner centers on the

7 grant of parole he received in his third subsequent parole hearing on November 28, 2005, and the

8 reversal of that decision by the full Board on February 22, 2006.  (See Traverse, Attach. B.)  The

9 stated reason for that reversal was the full Board's finding that the victim's next of kin had not

10 been notified of the hearing, a procedural deficiency that the full Board construed as "an error of

11 law which could result in a different decision upon rehearing."  (Id.)

12            Petitioner argues that the reversal of the decision to grant parole by the full Board

13 shows: (1) that he was treated differently from prisoners whose victims' next of kin do not

14 appear at a hearing after being notified; and (2) that "the executive's implementation of the

15 parole system in California" has "arbitrarily established a policy of almost never permitting

16 parole." (Traverse, ¶ 9.)  He characterizes the allegedly arbitrary executive policy as an

17 impermissible ex post facto application of policy against him.

18            Petitioner's challenges to this third parole decision, first set forth in his traverse,

19 have no bearing on the merits of the petition now before the court which challenges only the

20 denial of parole at petitioner's hearing of February 26, 2002.  Claims raised for the first time in a

21 traverse are not cognizable bases for relief.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507

22 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for relief).  The

23 /////

24 /////

25 /////

26 /////

1  full Board's reversal in 2006 of the decision to grant parole can only be challenged in this court

2  by a separate, timely filed federal petition for writ of habeas corpus.[22]

3          For all of the reasons set forth above, the petition now before the court states no

4  grounds upon which petitioner is entitled to relief at this time.  Therefore it will be recommended

5  that the petition be denied.

6                                    CONCLUSION

7          Accordingly, IT IS HEREBY ORDERED that:

8          1.  The findings and recommendations of February 11, 2009 (Doc. No. 26) are

9  vacated; and

10         2.  The request for expansion of the record (Doc. No. 28) is granted as to Exhibits

11 1 and 3 attached to the request and as to all other attached exhibits is denied.

12         IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

13 habeas corpus be denied.

14         These findings and recommendations are submitted to the United States District

15 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

16 days after being served with these findings and recommendations, any party may file written

17 objections with the court and serve a copy on all parties.  Such a document should be captioned

18 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19 shall be served and filed within ten days after service of the objections.  The parties are advised

20 /////

21 /////

22 /////

23

24         [22]  As stated above, this is a very close case with respect to the Board's 2002 decision to
   deny petitioner parole.  If the present record of petitioner's model behavior remained intact and
25 the full Board in 2006 reversed a panel decision to grant petitioner parole based on a procedural
   deficiency caused by the Board's own failure to notify the victim's next of kin of the parole
26 hearing, an even more serious due process issue would be presented to this court.

                                          31

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: August 4, 2009.

4

5

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:10
   rubi0638.amended.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26